STATE of Alaska, Petitioner,

v.

Erwin MORGAN, Respondent.

No. A–7040.

Court of Appeals of Alaska.

Sept. 3, 1999.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for appellant.

Lori M. Bodwell, Fairbanks, for appellee.

Before COATS, Chief Judge, MANNHEIMER and STEWART, Judges.

1. AS 11.46.130.

2. AS 11.46.285.

## OPINION

COATS, Chief J.

This petition presents us with a question of statutory interpretation. The question before us is whether Morgan could be convicted under AS 11.46.290(a) of obtaining a credit card by fraudulent means when he only obtained the credit card number and not the physical card. We conclude that, for these purposes, the credit card number is the "credit card."

Karen Shields was romantically involved with Christopher Wall, and she revealed her AT & T calling card number to him. After the relationship ended, Wall gave Shields' calling card number to Erwin Morgan, a fellow inmate at the Fairbanks Correctional Center. (Wall revealed this information to Morgan to pay off a debt.) Morgan used the calling card number to place $3,669.45 worth of long-distance telephone calls without Shields' permission. As a result, the state charged Morgan with three counts: theft in the second degree,[1] fraudulent use of a credit card,[2] and obtaining a credit card by fraudulent means.[3] The first two counts were merged at trial.

It was undisputed that Morgan never physically possessed the plastic AT & T card at any time. At the close of the state's case, Superior Court Judge Charles R. Pengilly ruled that AS 11.46.290(a)(1) required proof of the defendant's possession of a physical object, not just the credit card number. He therefore granted Morgan's motion for judgment of acquittal on the charge of obtaining a credit card by fraudulent means.

Morgan's case was submitted to the jury solely on the remaining count of theft. The jury was ultimately unable to reach a verdict on this charge, and Judge Pengilly declared a mistrial.

The state has petitioned us to review Judge Pengilly's ruling dismissing the charge of obtaining a credit card by fraudulent means. We conclude that possession of a credit card number itself is sufficient to sus-

3. AS 11.46.290(a)(1).

tain a conviction for fraudulently obtaining a credit card under AS 11.46.290(a)(1).

Morgan was charged under AS 11.46.290(a)(1), which states (in pertinent part) that a person commits the crime of obtaining a credit card by fraudulent means if the person "buys a credit card from a person other than the issuer." In order to resolve the question before us, we must determine whether the credit card number itself constitutes a "credit card" as that term is used in this statute.

Alaska Statute 11.81.900(b)(8) defines "credit card" as

> any instrument or device, whether known as a credit card, credit plate, courtesy card, or identification card or by any other name, issued with or without fee by an issuer for the use of the cardholder in obtaining property or services on credit[.]

Thus, the question is whether a credit card number qualifies as an "instrument or device . . . for the use of the cardholder in obtaining property or services on credit."

Turning to several dictionaries in common use, we find that the word "device" is not limited to physical objects. For example, Black's Law Dictionary defines "device" as "an[y] invention or contrivance," as well as any "plan." [4] Similarly, Webster's Dictionary defines "device" as "a thing devised", a "plan" or "scheme." [5] And Merriam–Webster's Collegiate Dictionary defines "device" as "[something] designed to serve a special purpose or perform a special function." [6] Under these definitions, Shields' AT & T credit card number constitutes a "device" for allowing long-distance telephone calls to be made on credit.

Policy considerations and case law support the conclusion that a credit card number is included in the definition of "credit card." As the Arkansas Supreme Court recognized in *Patterson v. State*, "[i]t is the use of the

account numbers on a credit card which gives the plastic card any credit value." [7] Most people are aware that once they memorize the number on their plastic credit card, they no longer need the plastic card to make long-distance telephone calls or to purchase other goods or services over the telephone or across the Internet. In these transactions, merchants and buyers do not meet face-to-face, and merchants do not demand proof that the buyer is holding a plastic card. Rather, the buyer's knowledge of the credit card number is what allows the buyer to make these purchases on credit. Physical possession of the plastic card is unnecessary, for the value of the card resides in the number. In *Patterson*, the defendant was convicted of the fraudulent use of a credit card when she used someone else's credit card to obtain clothing from a department store. [8] Patterson appealed, arguing that the state failed to prove that the physical credit card had ever been stolen from the rightful owner's possession. The court concluded that it was the account number that gives the credit card its value, not the actual piece of plastic. It was therefore sufficient for the state to show that Patterson, without authorization, used another person's credit card account number to obtain merchandise. [9]

The Supreme Court of Kansas reached the same result in *State v. Howard*. [10] In *Howard*, the defendant wrote down a Sears credit card account number on a piece of paper, then used the account number to purchase a television set. He argued on appeal that he could not be convicted because there was no evidence that he used the actual plastic card. The court concluded that the statute covered unauthorized use of the account number. [11]

Morgan argues that cases such as *Patterson* and *Howard* are not on point because the defendants in those cases were charged with fraudulent "use" of a credit card, not "obtain-

---

**4.** Black's Law Dictionary 452 (6th ed.1990).

**5.** Webster's New World Dictionary 377 (3rd College ed.1988).

**6.** Merriam–Webster's Collegiate Dictionary 317 (10th ed.1993).

**7.** 326 Ark. 1004, 935 S.W.2d 266, 267 (1996).

**8.** *See id.*

**9.** *See id.*

**10.** 221 Kan. 51, 557 P.2d 1280, 1282–83 (1976).

**11.** *See id.* at 1283.

ing" a credit card. But the same statutory definition of "credit card" governs, whether a defendant is charged with fraudulent use of a credit card under AS 11.46.285(a) or with unlawfully obtaining a credit card under AS 11.46.290(a). Thus, we conclude that *Patterson* and *Howard* are pertinent to our decision.

Morgan also relies on *People v. Tansey*[12] for the proposition that a defendant must physically possess the plastic card, not merely the account number. However, the defendant in *Tansey* was charged with possession of stolen property, and the New York court concluded that the statutory definition of this crime required proof that the defendant possessed something "tangible." *Tansey* turned on the specific language of the New York Penal Code, and it therefore has little relevance to the question facing us—the proper construction of "credit card" as that term is used in the Alaska statutes.

For the reasons explained above, we conclude that a credit card account number is a "device" for obtaining goods or services on credit. We therefore hold that the definition of "credit card" contained in AS 11.81.900(b)(8) does not refer solely to tangible physical objects, but rather includes credit card account numbers. We accordingly conclude that Morgan obtained a "credit card" when he obtained Shields' AT & T account number, even though he never possessed the plastic card. Judge Pengilly was wrong to grant Morgan a judgment of acquittal on this charge.

Morgan contends that, even if Judge Pengilly's ruling was erroneous, that ruling—the granting of a judgment of acquittal—nevertheless bars the state from renewing its prosecution of this charge. Morgan argues that any renewal of the prosecution would violate the double jeopardy provisions of the United States and Alaska Constitutions.

Morgan raises a difficult legal issue.[13] The parties' briefs are of little assistance to us; each party devotes hardly more than a page of argument to the double jeopardy question. Morgan's brief, for example, assumes that Judge Pengilly ruled in his favor on the factual elements of the offense; he does not address the issue of whether double jeopardy would bar renewed prosecution if Judge Pengilly's ruling amounted to a legal ruling that, based on the indictment and the state's underlying case, the state failed to allege a crime.

Fortunately, we conclude that we need not resolve Morgan's double jeopardy claim because the issue is not yet ripe. As noted above, Morgan's trial ended in a mistrial; the charges against Morgan remain unresolved. If the state chooses to prosecute Morgan only under the other statutes that criminalize his conduct, then the double jeopardy issue presented in this appeal will not arise. If the state does choose to reprosecute Morgan on the charge of obtaining a credit card by fraudulent means, this would give Judge Pengilly an opportunity to clarify the nature of his ruling and, ultimately, this would give the parties the opportunity to brief the double jeopardy issue in a more meaningful fashion.

The superior court's ruling concerning the meaning of "credit card" in AS 11.81.900(b)(8) is REVERSED. We express no opinion as to whether Morgan can again be prosecuted for the dismissed count of obtaining a credit card by fraudulent means.

**12.** 156 Misc.2d 233, 593 N.Y.S.2d 426 (N.Y.Sup. Ct.1992).

**13.** Compare *State v. Martushev*, 846 P.2d 144, 148 (Alaska App.1993) with *United States v. Scott*, 437 U.S. 82, 94–99, 98 S.Ct. 2187, 57

L.Ed.2d 65 (1978), for an illustration of the complexity in distinguishing between an acquittal, based upon a resolution of the factual elements of an offense, and a dismissal, based upon solely legal grounds.