899 A.2d 139

**Damont Isaiah GIDDINS**

v.

**STATE of Maryland.**

**No. 84 Sept. Term, 2005.**

Court of Appeals of Maryland.

May 12, 2006.

Reconsideration Denied June 14, 2006.

2

4

Philip J. Sweitzer (Winston Law & Mediation, Westminster; Ronald I. Kurland of Ronald I. Kurland, P.A., Baltimore), all on brief, for Petitioner.

Brian S. Kleinbord, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief). Baltimore, for Respondent

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned) JJ.

BATTAGLIA, Judge.

Petitioner, Damont Isaiah Giddins, seeks review of the Court of Special Appeals's judgment affirming the denial of his "Motion to Bar Retrial Following Mistrial (Double Jeopardy)" after the Circuit Court for Worcester County had granted Mr. Giddins's motion for mistrial during direct examination of the State's first witness. We granted certiorari in this case to answer the following questions:

1. Whether the trial court entered an order that was a "favorable termination," tantamount to an acquittal of Petitioner, when it granted a mistrial and discharged the jury,

and thereafter the trial judge—in response to the Prosecutor's specific assertion on the record that the "State [would] retry" Petitioner—exclaimed on the record from the bench that the Prosecutor had committed "misconduct" and that the State was barred from prosecuting Petitioner a second time?

2. Whether the State's Attorney's avowal or motion to retry the Petitioner on the record, after the trial judge dismissed the jury and terminated original jeopardy, was sufficient to ripen the issue of double jeopardy for a determination?

3. Whether the trial court committed reversible error by drafting a *sua sponte* letter to revise its judgment, reinstitute the prosecution, reschedule the matter and effectively order another judge to sit in review of itself, after it ruled that Petitioner could not be retried?

*Giddins v. State*, 389 Md. 398, 885 A.2d 823 (2005). We shall hold that the trial court's granting of Mr. Giddins's motion for a mistrial did not constitute an acquittal, thereby foreclosing retrial under principles of double jeopardy, because the judge was not ruling on the evidence.

## Background

On July 6, 2004, Damont Isaiah Giddins was on trial in the Circuit Court for Worcester County for two counts of possessing a controlled dangerous substance with intent to distribute in violation of Maryland Code (2002), Section 5–602 of the Criminal Law Article,[1] and two counts of possession of a controlled dangerous substance in violation of Maryland Code

---

1. Maryland Code (2002), Section 5–602 of the Criminal Law Article provides:
 Except as otherwise provided in this title, a person may not:
 (1) manufacture, distribute, or dispense a controlled dangerous substance; or
 (2) possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to manufacture, distribute, or dispense a controlled dangerous substance.

(2002), Section 5–601 of the Criminal Law Article.[2] During the State's opening argument, the following exchange transpired among the State, the Court, and Mr. Kurland, counsel for Mr. Giddins:

> THE STATE: What the case is about, briefly. In June of 2003, Detective Heiser, who is with the Ocean City Police Department, received information and began an investigation of drug distribution in the Ocean City, Northern Worcester County area. The target of that investigation—
>
> MR. KURLAND: Objection, Your Honor.
>
> THE COURT: Do you want to approach the bench, please?
>
> * * *
>
> MR. KURLAND: Your Honor, the search and seizure warrant has never been evidence since I've been practicing law and probably ever since you've been practicing law. I think the State is now poisoning a well in telling them about a drug distribution that they're never going to hear unless the State intends to call the informant into this courtroom to testify. This is improper. It's inexcusable, and I'm shocked that this seed has been planted.
>
> THE STATE: Your Honor, I am simply giving the jury background that they began an investigation. As a result of that investigation, they obtained a search warrant. I'm not going to go into the facts of what—how they obtained it, but this did not fall out of the clear blue sky. They have to have—
>
> THE COURT: Well, there's nothing wrong with that.
>
> THE STATE:—some brief prepatory remarks.
>
> MR. KURLAND: Your Honor—
>
> THE COURT: If that's as far as you take it.

---

2. Maryland Code (2002), Section 5–601 of the Criminal Law Article provides in pertinent part:

 (a) *In general.*—Except as otherwise provided in this title, a person may not:

 (1) possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice.

THE STATE: That's correct.

MR. KURLAND: I'm not concerned about Mr. Collins, with all due respect, taking it anywhere. And I truly respect him. I'm worried about the police officers now coming in and testifying, based upon their investigation and a search and seizure warrant, that they're going to testify—

THE COURT: Here's what we'll do. After opening statements, I usually give the jury a break. They've been out there a long time. At that point in time—

THE STATE: I will instruct my officers.

THE COURT: Is that okay? He could do it himself. Or—

\* \* \*

MR. KURLAND: Judge, sometimes it's very difficult now to cure a problem which shouldn't have been broached to begin with.

THE COURT: No, it isn't.

MR. KURLAND: This jury now knows that there was an investigation—

THE COURT: Well—

MR. KURLAND:—there was a search and seizure warrant. And, Judge—

THE COURT: There's nothing wrong with that.

MR. KURLAND: I don't see—

THE COURT: If he was going to go into—he didn't quite get there. But if he's going to go into, you know, your client being a target of an investigation because he distributed to some informant or something, yeah, that's—we got a real problem then. But he didn't get there because you objected.

MR. KURLAND: Judge, I think this would be an appropriate point for you to admonish the jury and have [the State] start all over.

THE COURT: What do you want me to admonish the jury about?

\* \* \*

MR. KURLAND: About the search and seizure warrant and an investigation.

THE COURT: That's coming in. They've got to say why they're there. They're going to say they have a search and seizure warrant.

As far as the contents of the warrant, we're going to have to depend upon—I'll do it myself if you want me to. I'll bring the officers in and tell them myself.

Mr. Kurland subsequently made a motion in limine to prevent the State from further mentioning the search and seizure warrant and the investigation, which the court denied. The State then continued its opening statement:

THE STATE: We'll start again.

In June of 2003, Detective Heiser began an investigation of drug distribution in Worcester County of the Defendant.

MR. KURLAND: Objection again, Your Honor.

THE COURT: Overruled.

THE STATE: The Defendant operates—or operated a retail store called Set It Off which is at the corner of Talbot and Baltimore Avenues in Ocean City, Maryland.

After a several-week investigation, the officers applied for and received a search warrant to search the Defendant and his store.

MR. KURLAND: Objection, Your Honor. That's—

THE COURT: It's noted. It'll be overruled.

THE STATE: Thank you, Your Honor.

THE COURT: Go ahead.

THE STATE: On Wednesday of August 8th of 2003, officers of the Ocean City Police Narcotics Division executed that search warrant at the Set It Off store. The Defendant was present. The officers will identify him.

Officer Heiser, who's seated there at the Defense table-or at the State's table—

MR. KURLAND: Your Honor, I'm going to object. May we approach, please?

THE COURT: All right.

MR. KURLAND: Your Honor, my theory in this case and the Defense's theory in this case is that my client is not a distributor, and by the very nature of the fact that it was a large quantity of drugs doesn't make him a distributor. Number two, the State has now planted this seed that there's a major investigation going on down here, and as a result of that investigation, a search and seizure warrant is issued by an issuing judge and they go to his establishment. Judge, this is grossly—

THE COURT: What's your suggestion, then, just so the record is clear on this? You don't want any mention of the search and seizure warrant?

MR. KURLAND: It's already been mentioned, Judge. This jury knows that there's an investigation—

THE COURT: So what do you want me to do about it?

MR. KURLAND: Well, I don't understand, honestly, why, if [the State] is admonished that we're going to start all over, that he starts all over from the beginning again.

THE COURT: Because I never said he couldn't mention that there was a search and seizure warrant.

MR. KURLAND: But, Judge, an investigation with a search and seizure warrant now in August at a man's place of employment —

THE COURT: You're making much more of this than what there is to it.

MR. KURLAND: I don't—

THE COURT: Certainly they can say why they were there. What are you supposed to do, remain silent as to why they were there? They just went in there and started searching?

MR. KURLAND: Yes.

THE COURT: No way.

MR. KURLAND: Yes.

THE COURT: No way.

MR. KURLAND: But, Judge—

THE COURT: If that's an objection, it's overruled.

MR. KURLAND: Why don't we pick it up and the point that there's a search and seizure warrant, not why there was a warrant, because it looks like—

THE COURT: Because you can't tell the State how to present their case any more than they can tell you.

MR. KURLAND: It gives the jury the impression that, as a result of this investigation, a search—

THE COURT: That's true.

MR. KURLAND:—and now they found drugs.

THE COURT: Well, that's true, isn't it?

MR. KURLAND: No, it's not true, not as far as the distribution case is—count is concerned.

THE COURT: Okay. I don't understand your motion. I mean, I think I understand it, but it's something I'm totally unfamiliar with.

They're certainly entitled to say why they were there and why they searched. He's not going to go into—I will not allow the particulars of some—because I've never had seen the search warrant. I assume maybe there was a controlled buy or something like that. I don't know. Or somebody had been there and seen drugs in the past. None of that is going to be allowed. But if it is, ask for a mistrial. I'll consider it.

MR. KURLAND: I'm going to ask for a mistrial right now, Your Honor.

THE COURT: All right. That's denied unless you want—I assume based on what you've already told me.

MR. KURLAND: Based upon what I've told you.

THE COURT: Okay. That's denied.

Both the State and Mr. Giddins finished their opening statements, and the Court then took a recess, during which the judge instructed the police officers:

THE COURT: Folks, there was a motion in limine made. There's also a motion for a new trial. The Defense Counsel is concerned that when you testify that you're going to go beyond more than saying that you were doing an investiga-

tion in Ocean City, and you applied for or granted a search and seizure warrant and served it. What he specifically doesn't want you to say is anything that's within the confines of that search warrant. Bear in mind, I haven't seen it all. But I assume there's something in there about either some informant or a controlled buy or something—usually there's something like that in there. None of that is to come in during this trial because that person is not here. And if it does, of course it will be the subject of a motion for a mistrial. Does that satisfy you, Mr. Kurland?

MR. KURLAND: Yes, it does, Your Honor. Thank you.

THE COURT: All right. Let me call—you can go on back out now. Let me call a couple cases here.

The court took up another matter before resuming the trial and bringing the parties back into the courtroom:

THE COURT: Before the jury is brought back in, I just want to make it clear on the search warrant. I don't see where it's necessary to say—I don't even know if this was a major one or not, but—a drug investigation. But just simply say, his investigation, he applied for a search and seizure warrant, and then you went in and you served it and take it from there.

The jury returned to the courtroom and the State called its first witness, Detective Heiser:

THE STATE: Would you state your name and employment, please.

DETECTIVE HEISER: Detective Heiser. I'm currently assigned to the Ocean City Vice Narcotics Unit.

THE STATE: How long have you been so assigned?

DETECTIVE HEISER: Two and a half years.

THE STATE: And pursuant to that—those duties, did you begin a drug investigation in June of last year?

DETECTIVE HEISER: Yes, sir, I did.

THE STATE: Who was the target of that investigation?

MR. KURLAND: Objection.

THE COURT: Sustained.

MR. KURLAND: Your Honor, may we approach, please?

THE COURT: Yes. I thought we went through this.

THE STATE: Your Honor, I asked him this in opening statement and the objection was overruled.

THE COURT: Not about him being a target of the investigation.

THE STATE: Well, as a result of that.

THE COURT: Well, it's his objection. Yes, sir.

MR. KURLAND: Your Honor, I'm going to renew my motion for a mistrial.

THE COURT: I'm going to grant it.

THE STATE: Your Honor.

THE COURT: I'm granting it. That is ridiculous what you just did. Jesus, we've had now three discussions over this.

The judge announced to the jury that he had declared a mistrial and released them. The proceedings, nevertheless, continued:

THE STATE: The record may reflect, Your Honor, the State will retry.

THE COURT: Now, here is the reason. When you say that he's the target of the investigation, what you're doing is you're considering all the facts that are in that search warrant which makes him the target of that investigation, not one bit of which, if it's based upon hearsay, which it most certainly is going to be, is going to be admissible. And we had three discussions on this. I couldn't believe you said it either.

THE STATE: May I respond, Your Honor.

THE COURT: I was as shocked as Defense Counsel.

THE STATE: We had three discussions on that, Your Honor, if I may, and all three times the Court overruled the Defense objection to exactly that.

I advised the jury in opening statement that the man was the target of it, and the Court overruled his objection.

THE COURT: No. Mr.—no, no. You're right on my ruling, but I only ruled, I specifically said what was going to

be admissible and what wasn't, and you walked right up there and tell him that after two warnings, and as far as I'm concerned, it's prosecutorial misconduct and you can't retry him.

THE STATE: Your Honor, the State will be noting an appeal to that.

The proceedings in open court were then terminated.

On July 8, 2004, the trial judge sent both the State and Mr. Giddins a letter to clarify that the comments he made at the conclusion of the trial regarding prosecutorial misconduct "were not meant to be an Order of this Court or the equivalent of an Order," but that both parties were entitled to a hearing on the issue of "prosecutorial misconduct" before another judge, and that he was therefore directing the case to be set in for a hearing "in the event the State seeks to retry the Defendant." On that same day, the State submitted a letter to the court requesting that the case be set in for retrial.

Mr. Giddins thereafter filed a "Motion to Bar Retrial Following Mistrial (Double Jeopardy)" about which another judge for the Circuit Court for Worcester County heard arguments on September 13, 2004. During the motions hearing Mr. Giddins argued that, under Maryland law, when the trial court grants a mistrial pursuant to the defendant's request, normally double jeopardy does not come into play to bar retrial; however, where there was prosecutorial misconduct, double jeopardy will bar retrial. The State, in response, contended that prosecutorial misconduct, assuming it occurred, alone would not bar retrial. Rather, the State contended that the prosecutor would have had to have "deliberately goaded" the defendant into requesting a mistrial, and that, without proof of such goading, retrial was not barred. The judge issued a written order on September 16, 2004, denying Mr. Giddins's Motion to Bar Retrial Following Mistrial on the grounds that there was insufficient evidence that the State intentionally sabotaged a trial that was going badly, or had deliberately goaded Mr. Giddins into requesting a mistrial.

In a published opinion, the Court of Special Appeals iterated that a mistrial requested by the defendant normally does not constitute a bar to re-prosecution, even though the motion was precipitated by prosecutorial misconduct. *Giddins v. State*, 163 Md.App. 322, 878 A.2d 687 (2005). This is because, as the Court of Special Appeals explained, the declaration of mistrial is, in itself, a sanction imposed upon the prosecution for its misconduct. Therefore, the intermediate appellate court noted, double jeopardy principles only will bar retrial in rare instances when the prosecution's overreaching has amounted to a deliberate and intentional sabotage of a trial that is going badly, thereby goading the defendant into requesting a mistrial. Based upon the findings of the motions judge, the Court of Special Appeals held that Mr. Giddins had failed to present any evidence that demonstrated deliberate goading and that the trial was far from going badly so that there would have been no reason for the prosecutor to have deliberately sabotaged it. Accordingly, the intermediate appellate court affirmed the denial of Mr. Giddins's Motion to Bar Retrial.

Before this Court, Mr. Giddins has abandoned his argument that a retrial was barred by prosecutorial misconduct and instead proposes that a retrial is barred on double jeopardy grounds because of the remarks made by the original trial judge when he declared a mistrial.[3]

---

**3.** The State contends that because Mr. Giddins never raised the issue of whether the original trial judge's declaration of a mistrial constituted an acquittal on the trial level, he failed to preserve the argument and therefore is precluded under Maryland Rule 8–131(a) from raising it in this Court. We granted certiorari, however, to address this issue, and therefore it is properly before us. *See* Maryland Rule 8–131(b) (2005). Moreover, this issue was raised in Mr. Giddins's Motion to Bar Retrial (Double Jeopardy), where he contended that reprosecution would be violative of his Fifth Amendment rights against double jeopardy and included the original trial judge's remarks regarding the admissibility of the facts in the search warrant. Further, Mr. Giddins argued in his brief in the Court of Special Appeals that the original trial judge's remarks constituted an acquittal, thereby barring his retrial, and the State took the opportunity to respond to it, without objecting on preservation grounds, in its brief in the Court of Special Appeals.

## Discussion

■ The issue in the case *sub judice*, whether the remarks made by the trial judge in explaining his purpose for declaring a mistrial constituted an acquittal, requires us to construe the protections afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Maryland common law. Whether principles of double jeopardy bar the retrial of Mr. Giddins is a question of law, and therefore we review the legal conclusion of the trial court *de novo*. *Bernadyn v. State*, 390 Md. 1, 8, 887 A.2d 602, 606 (2005); *Fitzgerald v. State*, 384 Md. 484, 490, 864 A.2d 1006, 1009 (2004); *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999).

■ Mr. Giddins relies on the plea of autrefois acquit [4] on the ground that, because the original trial judge's declaration of a mistrial was in direct response to the State's use of the phrase, "target of investigation," it was a ruling on some of the evidence in the case and therefore constituted an acquittal, thereby barring under both the Fifth Amendment and Maryland common law's prohibition against double jeopardy his retrial for the possession of and intent to distribute cocaine. Alternatively, Mr. Giddins claims that the trial judge's statement constituted an order because it was based upon the State's motion for mistrial and the judge intended for it to be a final disposition, as evidenced by his comment "you can't retry him." Therefore, even if it was not an acquittal *per se*, Mr. Giddins contends that it was the functional equivalent thereof. Mr. Giddins argues that, despite the lack of any

Thus, our consideration of this argument does not amount to "sandbagging" the State and, in the interest of promoting the orderly administration of justice, we shall reach the issue of whether the original trial judge's declarations, wherein he declared a mistrial, barred retrial under the principles of double jeopardy.

4. "Autrefois acquit" means already acquitted. *State v. Barger*, 242 Md. 616, 618, 220 A.2d 304, 305 (1966). The successful intersession of the common law plea of autrefois acquit would bar retrial of a defendant after the court has rendered a judgment of acquittal. *Farrell v. State*, 364 Md. 499, 506–07, 774 A.2d 387, 391 (2001).

docket entry, the trial judge's comments constituted an order because they were announced authoritatively in open court and that, even if the order was "egregiously erroneous," it was still tantamount to an acquittal because it terminated the controversy in his favor. His argument is supported, he submits, by the fact that the State had no recourse from the trial judge's order under Maryland Code (1975, 2002 Rep. Vol.), Section 12–302 of the Courts and Judicial Proceedings, and where there is no recourse, the order is effectively the equivalent of an acquittal. Moreover, Mr. Giddins maintains that, because the same issue was decided on July 6, 2004, between the same parties, and there was a judgment on the merits, the doctrine of res judicata prohibited the trial court from "redeciding" the issue by way of his letter dated July 8, 2004. Accordingly, Mr. Giddins argues that the July 6, 2004, trial was a final disposition of the charges against him in his favor and all subsequent proceedings would be violative of double jeopardy principles.[5]

---

5. Mr. Giddins also argues that the Court of Special Appeals incorrectly determined that the issue of whether retrial is barred under double jeopardy was not ripe for review, and, contending that it is ripe, cites for support *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), *United States v. Tranowski*, 702 F.2d 668 (7th Cir.1983); *United States v. Ustica*, 847 F.2d 42 (2d Cir.1988); *State v. Taylor*, 371 Md. 617, 629, 810 A.2d 964, 971 (2002); *Farrell*, 364 Md. 499, 774 A.2d 387 (2001), *Wright v. State*, 307 Md. 552, 515 A.2d 1157 (1986), *People v. Blaylock*, 202 Ill.2d 319, 269 Ill.Dec. 490, 781 N.E.2d 287 (2002), *State v. Rasch*, 188 Ariz. 309, 935 P.2d 887 (1996), *State v. Markarian*, 551 A.2d 1178 (R.I.1988), *State v. Siferd*, 151 Ohio App.3d 103, 783 N.E.2d 591 (2002), *State v. Morgan*, 985 P.2d 1022 (Alaska Ct.App.1999), *York v. State*, 751 So.2d 1194 (Miss.Ct.App.1999), *Commonwealth v. Moose*, 424 Pa.Super. 579, 623 A.2d 831 (1993), *Burks v. State*, 876 S.W.2d 877 (Tex.Crim.App.1994), *McCuen v. State*, 191 Ga.App. 645, 382 S.E.2d 422 (1989); *State v. Manley*, 2004 WL 2930890, 2004 Ida.App. Lexis 105. Mr. Giddins misinterprets the intermediate appellate court's conclusion. The Court of Special Appeals correctly determined that the double jeopardy issue was ripe once the trial court denied the Motion to Bar Retrial:

> The actual issue of double jeopardy in this case arose only 1) when the State, on July 8, 2004, requested that the case be docketed for retrial; and 2) when the appellant, on July 23, then interposed the plea in bar of double jeopardy. The issue of double jeopardy was

■ Conversely, the State maintains that the original trial court's comments were correctly determined by the Court of Special Appeals to have had no legally binding significance on the issue of double jeopardy because the judge had, at the time, made no findings of fact, made no pronouncement as to Mr. Giddins's guilt or innocence, and there was no subsequent docket entry memorializing the comments. Moreover, the State argues that, even if it were unclear from the record what was intended by the trial judge's comments regarding prosecutorial misconduct, the judge's letter dated July 8, 2004, rightfully clarified his intent. The State also contends that it was Mr. Giddins who requested the mistrial, and that this factor, coupled with the trial court's failure to determine Mr. Giddins's guilt or innocence, permits retrial of Mr. Giddins on the original charges.[6]

■ In the present case Mr. Giddins moved for a mistrial; under these circumstances retrial normally is not barred by the proscription against double jeopardy, the exception being

---

argued before Judge Groton on September 13 and ruled on by him on September 16. That is the only ruling that concerns us on this appeal. It is, moreover, the only actual ruling that was made in this case.

*Giddins*, 163 Md.App. at 352, 878 A.2d at 704.

Mr. Giddins also contends in his brief that the original trial judge's post-trial letter, whereby he addressed the issue of whether the State was barred from retrying Mr. Giddins, denied Mr. Giddins the opportunity to be present at a "critical state" of the trial proceeding, which he maintains is prejudicial error under *Denicolis v. State*, 378 Md. 646, 656, 837 A.2d 944, 950 (2003). He also claims that under *Johnson v. State*, 23 Md.App. 131, 140–43, 326 A.2d 38, 44–45 (1974), a prosecutor cannot testify on his own behalf, as the prosecutor did in this case at the hearing on the "Motion to Bar Retrial (Double Jeopardy)," absent compelling circumstances, and no such circumstances existed in this case.

These two issues were not raised in Mr. Giddins's petition to this Court for writ of certiorari; therefore, we decline to reach them. *See* Maryland Rule 8-131(a) and (b).

6. The State also contends that there is no bar to retrial in this case because, as the Court of Special Appeals held, there was no prosecutorial misconduct to provoke the mistrial. We do not address that issue here, however, because Mr. Giddins failed to raise the issue in his petition for certiorari.

18

where the prosecution has intentionally goaded the defendant into requesting the mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 670, 102 S.Ct. 2083, 2086, 72 L.Ed.2d 416, 421 (1982); *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976); *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971); *Taylor*, 371 Md. at 632, 810 A.2d at 972; *Harris v. State*, 312 Md. 225, 240 n. 7, 539 A.2d 637, 644 n. 7 (1988); *Booth v. State*, 301 Md. 1, 4, 481 A.2d 505, 506 (1984); *Tichnell v. State*, 297 Md. 432, 439–41, 468 A.2d 1, 5 (1983); *Bell v. State*, 286 Md. 193, 202, 406 A.2d 909, 913 (1979). Mr. Giddins contends, however, that despite the fact that the mistrial was declared pursuant to his request, and that he has failed to convince the intermediate appellate court in his argument about prosecutorial misconduct, the trial court's declaration constituted a resolution of some of the facts of the case, and therefore constituted an acquittal. He bases his argument on the fact that, in the course of making the declaration, the trial judge specifically commented that certain facts found in the search warrant would not be admissible. Therefore, Mr. Giddins claims that the State is prohibited under both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Maryland common law from re-prosecuting him.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects defendants in criminal prosecutions from multiple punishments and repeated prosecutions for the same offense, *Monge v. California*, 524 U.S. 721, 727–28, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615, 623 (1998); *Witte v. U.S.*, 515 U.S. 389, 395–96, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361 (1995), and was extended to the States through the Fourteenth Amendment in the Supreme Court's decision in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). An acquittal effectively bars retrial of a defendant because double jeopardy principles "forbid[ ] a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9

(1978); *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). The Supreme Court has defined an acquittal as the "resolution, correct or not, of some or all of the factual elements of the offense charged." *Smith v. Massachusetts,* 543 U.S. 462, 468, 125 S.Ct. 1129, 1134, 160 L.Ed.2d 914, 923 (2005); *Price v. Vincent,* 538 U.S. 634, 640, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877, 886 (2003); *United States v. Martin Linen Supply Company,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 651 (1977).

■ Consistent with the protections afforded by the Double Jeopardy Clause, defendants who have been indicted and acquitted of an offense may interpose the plea of autrefois acquit, if later charged with the same offense, to bar re-prosecution. *Kepner,* 195 U.S. at 126, 24 S.Ct. at 803, 49 L.Ed. at 123. The plea finds it genesis in the English common law, as explicated by Justice Day for the Supreme Court in *Kepner v. United States, supra:*

At the common law, protection from second jeopardy for the same offense clearly included immunity from second prose-cution where the court having jurisdiction had acquitted the accused of the offense. The rule is thus stated by Hawkins, Pleas of the Crown, quoted by Mr. Justice Story in *United States v. Gibert,* 2 Sumn. 39 Fed. Cas. No. 15,204:

'The plea (says he) of autrefois acquit is grounded on this maxim, that a man shall not be brought into danger of his life for one and the same offense more than once. From whence it is generally taken by all our books, as an undoubt-ed consequence, that where a man is once found not guilty, on an indictment or appeal, free from error, and well commenced before any court which hath jurisdiction of the cause, he may, by the common law, in all cases, plead such acquittal in bar of any subsequent indictment or appeal for the same crime.'

\* \* \*

The common law not only prohibited a second punishment for the same offense, but went further and forbid a second

trial for the same offense, whether the accused had suffered punishment or not, and whether, in the former trial, he had been acquitted or convicted.

And in as late a case as *Wemyss v. Hopkins*, L.R. 10 Q.B. 378, it was held that a conviction before a court of competent jurisdiction, even without a jury, was a bar to a second prosecution.

*Kepner*, 195 U.S. at 126–27, 24 S.Ct. at 803, 49 L.Ed. at 123.

 In determining whether the defendant can successfully plead autrefois acquit, the essential inquiry is whether there has been a ruling on the evidence, as the Supreme Court recently emphasized in *Smith v. Massachusetts, supra.* In *Smith,* the defendant was charged with armed assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawful possession of a firearm; a firearm was defined statutorily as a weapon possessing a barrel of less than sixteen inches. At the conclusion of the State's case, the defendant moved for an acquittal on the firearm count pursuant to Massachusetts Rule of Criminal Procedure 25(a) (2002) because the State had failed to prove that the gun barrel was less than sixteen inches. The trial judge granted the motion because there was "not a scintilla of evidence" that the barrel of defendant's weapon was sixteen inches or less. *Id.* at 465, 125 S.Ct. at 1133, 160 L.Ed.2d at 921. Nevertheless, at the end of the defendant's case, the prosecution argued that Massachusetts precedent permitted a victim's testimony to suffice for establishing the length of the gun barrel and requested that the judge delay ruling upon the sufficiency of the firearm evidence until after the jury verdict, to which the judge agreed.

The Supreme Court granted certiorari in *Smith* to address whether the trial judge's initial ruling on the defendant's motion constituted an acquittal, thereby barring submission of the firearms count to the jury under principles of double jeopardy. Examining the requisites of Massachusetts Rule of Criminal Procedure 25(a), the Supreme Court observed that Rule 25(a) requires the trial judge to enter a not guilty finding " 'if the evidence [was] insufficient as a matter of law to

sustain a conviction.' " *Id.* at 467, 125 S.Ct. at 1134, 160 L.Ed.2d at 923. Therefore, the Supreme Court concluded that when the trial judge granted the defendant's motion, the judge was acquitting the defendant on the charge of possession of a firearm and double jeopardy principles were implicated because "the judge 'evaluated the [State's] evidence and determined that it was legally insufficient to sustain a conviction.' " *Id.* at 469, 125 S.Ct. at 1135, 160 L.Ed.2d at 923–24.

The Supreme Court's holding in *Smith* follows a long line of cases recognizing that, despite the trial judge's characterization of the action, when the trial judge makes a determination as to the evidence in taking the action, an acquittal has been granted. *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (holding that trial court's granting of defendant's motion for demurrer constituted an acquittal for double jeopardy purposes because it was based on insufficiency of the evidence); *Burks,* 437 U.S. at 17–18, 98 S.Ct. at 2150–51, 57 L.Ed.2d at 13–14 (holding that appellate court's determination that there was insufficient evidence presented at trial implicated principles of double jeopardy and precluded remand of the case for further proceedings); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (determining that, even if trial court had dismissed charges for gambling based on a numbers theory, determination that there was insufficient evidence to convict defendant under the indictment barred defendant's retrial on the charges under the numbers theory); *United States v. Scott,* 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 80 (1978) (holding that the trial court's grant of the defendant's motions to dismiss charges did not implicate principles of double jeopardy where there had been no finding of fact as to the defendant's guilt or innocence); *Martin Linen Supply Company, supra* (concluding that the trial court's entry of judgment of acquittal based upon insufficient evidence to convict the defendant barred government's appeal under principles of double jeopardy).[7]

---

7. Mr. Giddins cites *Fong Foo v. United States Standard Coil Products Co.,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), in support of his

■ The protection against being placed twice in jeopardy also has long existed in Maryland common law, and this Court has recognized that this protection is invoked by entry of a judgment of acquittal. *See Taylor*, 371 Md. at 629, 810 A.2d at 971; *Middleton v. State*, 318 Md. 749, 756–57, 569 A.2d 1276, 1279 (1990); *Gianiny v. State*, 320 Md. 337, 346–47, 577 A.2d 795, 799–800 (1990); *Daff v. State*, 317 Md. 678, 687–88, 566 A.2d 120, 125 (1989); *Wright*, 307 Md. at 573, 515 A.2d at 1167–68; *Brooks v. State*, 299 Md. 146, 155, 472 A.2d 981, 986 (1984); *Block v. State*, 286 Md. 266, 268, 407 A.2d 320, 321 (1979); *Pugh v. State*, 271 Md. 701, 704–05, 319 A.2d 542, 544 (1974); *Barger*, 242 Md. at 624, 220 A.2d at 309; *State v. Adams*, 196 Md. 341, 344, 76 A.2d 575, 576 (1950); *State v. Shields*, 49 Md. 301, 303 (1878). We also have recognized that, where the trial judge has taken action based upon the evidence, that action, despite its characterization, constitutes an acquittal for double jeopardy purposes. We made this clear in our analysis in *Taylor*, *supra*, in which we consolidated the cases of *State v. Taylor* and *Bledsoe v. State*, to address the question of whether the grant of the defendants' motions to dismiss could constitute acquittals, thereby barring reprosecution by the State.

In *Taylor*, the defendant was charged by criminal information with three counts of soliciting unlawful sexual conduct,

---

argument. In *Fong Foo*, a corporation and two of its employees were brought to trial for charges of conspiracy and concealing material facts in violation of 18 U.S.C. §§ 371 and 1001. After seven days of trial, and in the middle of testimony from the government's fourth witness, the federal district court ordered the jury to return verdicts of acquittal as to all the defendants on the grounds of prosecutorial misconduct and a lack of credibility in the testimony of the prosecution's witnesses. In a per curiam order, although questioning whether the trial court could order the jury to return a verdict of acquittal, the Supreme Court affirmed the acquittals stating that, even if erroneously entered, "[t]he verdict of acquittal was final and could not be reviewed." *Id.* at 143, 82 S.Ct. at 672, 7 L.Ed.2d at 631.

We do not find petitioner's reliance on *Fong Foo* persuasive. In *Fong Foo*, the trial judge specifically cited the evidence as his justification for the acquittal. In the present case, the trial judge declared a mistrial, and there is no indication in the record to suggest that the mistrial was based upon the prosecution's evidence.

one count of attempted third degree sexual offense, and one count of attempted sexual degree assault, and thereafter filed a motion to suppress evidence, dismiss the charges, or, in the alternative, grant a change of venue and, in support of his motion, moved into evidence a photocopy of the "confidential" memorandum prepared and relied upon by the State in preparing the criminal information. At the hearing on his motion, Taylor argued that, based on the facts in the memorandum, venue in Frederick County was improper, that his actions did not fall within the conduct prohibited by the statutory offense, and that even if it did, his conduct did not amount to a violation of the statute. In dismissing the information, the trial judge ruled that:

[t]he allegation as to the offense which everybody agrees is on page five [of the confidential memorandum] which is in fact what the conversation was, is not in any means, by way of a computer to publish or disseminate notice, statement or advertisement of minor's name, ... etcetera for the purpose of engaging, facilitating, encouraging, offering or soliciting unlawful sexual conduct. . . . It appears to be just a conversation that was held and not what is forbidden by the statute.

*Id.* at 638, 810 A.2d at 976. The State noted an appeal to the Court of Special Appeals, and we took the matter up for consideration prior to the intermediate appellate court deciding it.

In *Bledsoe,* three men were charged in the District Court of Maryland, sitting in Prince George's County by criminal information with conspiracy to violate a Prince George's County Code (1967), Subtitle 14, § 14–139.02(b)(2) [8] ("Ordinance"), making it illegal to appear nude in a public place, for allegedly

---

**8.** Prince George's County Code (1967), Subtitle 14, § 14–139.02(b)(2) provides in pertinent part:

(b) It is unlawful for any person to knowingly or intentionally, in a public place:

(1) Engage in sexual intercourse;

(2) Appear in a state of nudity; or

(3) Fondle one's own genitals or those of another person.

conspiring to have several women engage in public nudity at the Showcase Theater. The defendants filed a pre-trial motion to dismiss, or in the Alternative for Judgment of Acquittal, and argued that the information was duplicitous on its face because it alleged two violations in a single count, that the statute under which they were charged was unconstitutionally overbroad, and that there was no crime under the ordinance because the Showcase Theater at which the nude dancing occurred was not a public place, and therefore if there was no crime, there was no conspiracy. At the hearing, the trial judge stated, "[I]n order for me to rule on this motion, it seems as though the Court has to make at least certain factual findings, or certain factual findings need to be stipulated to." *Id.* at 622, 810 A.2d at 967. The parties then stipulated to some of the facts in dispute, and the trial judge subsequently issued an oral ruling, accompanied by a written opinion, granting the motion to dismiss the criminal information, in which he stated: " '[a]pplying the reasoning of the *Hughes* [*v. Cristofane*, 486 F.Supp. 541 (D.Md.1980),] decision to the present facts, we find that [the Ordinance] imposes a chilling effect on constitutionally protected expression.' " *Id.* at 623, 810 A.2d at 967. The State appealed the dismissal to the Circuit Court, where the charges were reinstated and the matter remanded to the District Court for trial on the grounds that, under the plain language of the Ordinance, the Showcase Theater did constitute a public place, and jeopardy did not attach from the District Court proceedings because the charges were dismissed. Proceedings in this Court ensued.

We held that the State was precluded from appealing the dismissal in *Taylor*, and barred from retrying the defendant after the dismissal in *Bledsoe:*

Therefore, although we agree with the State's argument that granting the motions to dismiss based on evidence extrinsic to the charging documents was improper, we conclude that those rulings nonetheless were the equivalent of granting acquittals, and must be treated as such for jeopardy purposes. As acquittals, the trial judges rendered final judgments, the appeal from which or retrial, as discussed

*supra,* would be a violation of Petitioners' and Appellee's protections against double jeopardy under Maryland common law.

*Id.* at 654, 810 A.2d at 985. Our holding was predicated upon the fact that, in *Taylor* the lower court had based its decision to grant the motion to dismiss upon facts found in the police memorandum accompanying the information, and in *Bledsoe* upon facts found in the information establishing probable cause for the arrest of the defendants. Consequently, we determined that, despite being couched as motions to dismiss, because the trial judges had ruled on the evidence in both instances, the dismissals "substantively constituted judgments of acquittal and therefore must [have been] given effect as such for jeopardy purposes." *Id.* at 644, 810 A.2d at 979. In reaching that conclusion, Judge Harrell, writing for this Court, reflected upon the protection against being placed twice in jeopardy:

> The purposes underlying double jeopardy include 'protect[ing] the integrity of a final judgment.' *United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 74 (1978), and assuring that the State 'with all its resources and power' is not 'allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). The basic premise of the double jeopardy prohibition is that when a criminal defendant has been put in jeopardy once, he or she may not be so placed again regarding the same offense. He or she is protected from successive prosecutions as well as cumulative punishments. The principle of double jeopardy encompasses three interrelated pleas at common law: *autrefois acquit, autrefois convict,* and pardon. *See United States v. Wilson,* 420 U.S. 332, 340, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232, 239 (1975); *Parks v. State,* 287 Md. 11, 14, 410 A.2d 597 (1980). The

pleas of *autrefois convict* and pardon provide that a criminal defendant may not be prosecuted twice for the same offense *after conviction* and may not be punished multiple times for the same offense.

*Id.* at 630, 810 A.2d at 971 (emphasis provided). The common law plea of autrefois acquit, on the other hand, insulates a verdict of *acquittal* by ensuring that it

can never afterward, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury.

*Id.* at 633, 810 A.2d at 973 (citations omitted).

Judge Harrell's analysis in *Taylor* is premised upon a long line of our cases recognizing that double jeopardy principles are invoked only when a dismissal or an equivalent order is based on the evidence. *See Wynn v. State,* 388 Md. 423, 446, 879 A.2d 1097, 1110 (2005) (Wilner, Battaglia, and Greene, JJ., concurring) ("When a case is properly called for trial, the State is put to the burden of producing legally sufficient evidence to convict, and if it fails to produce such evidence, for whatever reason, acquittal is mandated."); *Daff,* 317 Md. at 689, 566 A.2d at 126 (holding that trial court's entering of a finding of not guilty based upon the evidence constituted an acquittal barring retrial); *Brooks,* 299 Md. at 151, 472 A.2d at 984 (concluding that trial court's grant of motion for judgment of acquittal was based upon the evidence and therefore implicated protections against double jeopardy); *Wright,* 307 Md. at 566, 515 A.2d at 1164 (noting that, for double jeopardy purposes, the critical question in determining whether the trial court's actions constituted an acquittal is whether it represented a resolution of some or all of the facts); *Pugh,* 271 Md. at 707, 319 A.2d at 545 (holding that trial judge's rendering of verdict of not guilty barred further proceedings under double jeopardy principles). An argument also could be made that an intentional rendition of a verdict expressly stating "acquittal" always bars retrial under Maryland law, regardless of the basis. We do not have to reach this here, however.

Therefore, in determining whether an acquittal has been granted, we look to the substance of the trial judge's action. As Judge John C. Eldridge, writing for this Court, articulated in *Pugh, supra,* when the trial judge's action "represent[s] an intended decision based upon the judge's view that the prosecution had failed to prove [its case]," the action is an acquittal. *Id.* at 707, 319 A.2d at 545. *Taylor* further clarified these analyses by establishing that the timing of the trial court's action also is irrelevant. In *Taylor,* we held that the pretrial motions to dismiss constituted acquittals in both *State v. Taylor* and *Bledsoe v. State* because they were granted based upon the prosecution's factual proffers or stipulations.

In the present case, the trial judge declared a mistrial after the trial had begun and during direct examination of the State's first witness. Applying the principles set forth by both the Supreme Court and this Court, we look beyond the trial court's characterization of its action, and the timing of the action, to discern whether, in declaring a mistrial, the trial judge ruled on the prosecution's evidence. In declaring a mistrial, the trial judge endeavored to explain his rationale to the State:

[w]hen you say that he's the target of the investigation, what you're doing is you're considering all the facts that are in the search warrant which makes him the target of that investigation, not one bit of which, if it's based upon hearsay, which it most certainly is going to be, is going to be admissible.

It is clear from these remarks that the trial judge was speaking to the *admissibility* of the evidence and not the *sufficiency* or weight of the evidence. This conclusion is further buttressed by the trial judge's later comments to the State:

You're right on my ruling, but I only ruled, I specifically said what was going to be *admissible* and what wasn't. . . .

(emphasis added). Further, although the trial was underway when the judge granted a mistrial, the only evidence before

him at the time was the name and employment of the State's first witness, Detective Heiser. Thus, there simply was no evidence before the trial judge at the time that he declared a mistrial so as to give credence to Mr. Giddins's argument that the trial judge was actually ruling on the State's evidence.

Faced with similar factual situations to the case at bar in which the trial court did not rule on the evidence, our sister state supreme courts have ruled that double jeopardy principles will not bar retrial. In *State v. Scott*, 165 W.Va. 73, 267 S.E.2d 173 (1980), the defendant was charged with a second offense of driving a motor vehicle while under the influence of alcohol. At the conclusion of the State's case, the defendant moved for a directed verdict, which the trial court denied. Nevertheless, the judge suggested that a mistrial motion may have been appropriate because the chemical analysis of the defendant's blood alcohol test had not been conducted in accordance with the standards approved by the state department of health, so that the blood tests were improperly admitted. Acting on that advice, the defendant made a motion for mistrial, which was granted. The case was then set in for another trial, and the defendant filed an unsuccessful motion claiming retrial was barred by principles of double jeopardy.

Before the Supreme Court of Appeals of West Virginia, the defendant argued that the bar against double jeopardy precluded him from being retried after the original trial judge declared a mistrial. In rejecting the claim, the Court reflected that:

> In regard to a claim of evidentiary insufficiency . . . [s]uch a claim is based on the proposition that the state has failed to prove all of the essential elements of the crime. If this is asserted successfully on the trial court level, it would result in a judgment of acquittal and jeopardy would bar a retrial, since the prosecutor, having had a fair opportunity to present his entire case, should be foreclosed from a second trial under double jeopardy,

*id.* at 180, but held that:

> [w]here, as in the present case, the defendant moves for a mistrial on the basis of reversible error *not arising from*

*evidentiary insufficiency* ... jeopardy does not ordinarily bar a retrial, because the mistrial motion is functionally equivalent to an appeal based on the same trial error.

*Id.* at 179 (emphasis provided). To hold otherwise, the Court noted "would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error." *Id.* at 178, quoting *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448, 451 (1964).

In *State v. Vincent,* 455 Mich. 110, 565 N.W.2d 629 (1997), the Supreme Court of Michigan addressed the issue of whether a judge's comments during a trial constituted a judgment of acquittal, thereby preventing the jury from considering the evidence. The trial judge's comments were made after the close of the State's case in chief and in response to the defendants' motion for directed verdicts of acquittal on the charges of first-degree murder, wherein the defendants argued that there was insufficient evidence of premeditation and deliberation. The trial judge opined that:

> my impression at this time is that there's not been shown premeditation or planning in the, in the alleged slaying. That what we have at the very best is Second Degree Murder.... I have to consider all the factors. I think that the second Count should remain as it is, felony firearm. And I think that Second Degree Murder is an appropriate charge as to the defendants. Okay.

*Id.* at 630. In light of these comments, the State asked for time the next day to make a brief statement to the jury in an attempt to salvage the first-degree murder charges, to which the trial judge acquiesced. *Id.* The next day, the State addressed the jury at which time the defendants objected on the ground that the judge, by way of his comments the previous day, had directed a verdict of acquittal, thereby barring any proceedings on the charges of first-degree murder. The trial judge denied having acquitted the defendants, and all three defendants were subsequently convicted of first-

degree murder. Vincent appealed the convictions, arguing that he had been placed twice in jeopardy.

In determining whether the trial judge's comments constituted an acquittal, the Supreme Court of Michigan noted:

> We recognize that a judge's characterization of a ruling and the form of the ruling may not be controlling. 'The Court must inquire whether "the ruling in (defendant's) favor was actually an 'acquittal' even though the District Court characterized it otherwise." ' Ultimately what we must determine is 'whether the ruling of the judge, whatever its label, *actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.*'

*Id.* at 632–33 (citations omitted and emphasis provided) and concluded that the trial judge had "not undertake[n] an evaluation of all the evidence, nor did he render a statement of sufficient clarity and finality" that could be construed as such. *Id.* at 633. Thus, the Supreme Court of Michigan held that Vincent had not been acquitted on the charge of first-degree murder, and his conviction for first-degree murder did not violate prohibitions against being placed twice in jeopardy.

In the present case, the trial judge's comments were not a ruling on the evidence and therefore did not constitute an acquittal barring retrial.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.***