623 A.2d 831

COMMONWEALTH of Pennsylvania, Appellee,

v.

Carlos Gene MOOSE, Appellant,

COMMONWEALTH of Pennsylvania, Appellant,

v.

Carlos Gene MOOSE, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 5, 1993.

Filed April 20, 1993.

580

Allen H. Smith, York, for Carlos G. Moose.

John Thompson, Jr., Asst. Dist. Atty., York, for Com.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

Carlos Gene Moose ("Moose") appeals the order entered June 23, 1992, in the Court of Common Pleas of York County denying his motion to dismiss the charges against him.[1] The complex factual and procedural history of this case follows. On February 10, 1988, the Commonwealth filed a complaint

---

1. The Commonwealth has also filed a cross-appeal in this case. The cross-appeal is from the court's order, also of June 23, 1992, granting Moose's motion to bar the Commonwealth from seeking the death penalty on retrial. *See* part II, *infra.*

against Moose and Quinterio Smart ("Smart") for the rape and murder of Judy Ketterman. On April 1, 1988, Moose's counsel filed for discovery, requesting copies of all statements of either Moose, Smart, or any witnesses, police reports, and any exculpatory information in the Commonwealth's possession. The district attorney failed to fully comply with that request. In the district attorney's possession, but not produced for discovery, was a statement of Sonny Oglesby ("Oglesby"). The statement contained incriminating statements allegedly made by Moose while both Oglesby and Moose were in the York County prison. Oglesby conveyed Moose's alleged confession to the Commonwealth pursuant to an agreement between it and Oglesby, whereby the Commonwealth would recommend a lenient sentence in exchange for Oglesby's information.

Nonetheless, after the Commonwealth failed to produce any discovery, Moose's counsel filed a formal application for discovery on May 2, 1988. The trial court conducted an evidentiary hearing on May 31, 1988. The court ordered that the materials requested by defense counsel be made available. Oglesby's statement was not ordered to be made available because at the time, neither the court nor defense counsel knew of its existence. Nonetheless, still having not received the full complement of the materials requested, defense counsel again contacted the district attorney on June 10, 1988, seeking compliance with the request. The court held a second hearing on July 11, 1988. The district attorney produced additional discovery, but once again Oglesby's statement was omitted. The district attorney repeatedly assured defense counsel and the court that all evidence available to the Commonwealth had been provided to the defense.

Despite these requests and assurances, on the first day of trial, August 17, 1988, the district attorney told the trial court that Oglesby had given a statement on April 5, 1988, and that the Commonwealth intended to call Oglesby as a witness. Defense counsel requested a continuance and/or sanctions. The trial court agreed to grant a continuance so that defense counsel could examine Oglesby's statement. Nonetheless, the

district attorney requested that the court impose a sanction precluding Oglesby's statement, so that the trial could go forward. At that point, the trial court precluded use of the statement.

When the Commonwealth presented its case, it offered the testimony of a detective who testified to Moose's statement upon his arrest. In the statement, Moose denied raping or beating Judy Ketterman, but admitted being present when Smart raped her. Moose took the stand on his own behalf and once again stated that he did not rape the victim and that he fled when he saw Smart starting to beat the victim. Thereafter, contrary to its initial ruling and over defense counsel's objection, the trial court without explanation permitted Oglesby to testify in rebuttal of Moose's testimony. Oglesby stated that Moose told him that he had raped Ms. Ketterman and that he had hit her in the head with a rock. On re-rebuttal, Moose stated that he had never spoken to Oglesby concerning the crime.

A jury convicted Moose of first-degree murder, conspiracy to commit murder, rape, and conspiracy to commit rape. Although the Commonwealth sought the death penalty, the jury returned a sentence of life imprisonment. The court sentenced Moose to life imprisonment plus a consecutive term of fifteen to thirty years.

Moose filed post-trial motions, contending that the Commonwealth's "understanding" with jailhouse informant Oglesby deprived him of the Sixth Amendment right to counsel, because Moose in effect gave a statement to the Commonwealth without the safeguards afforded by counsel's presence. At a hearing on those motions, the district attorney admitted to an "implied understanding" with Oglesby, whereby Oglesby informed the district attorney about statements made by individuals in the York County prison awaiting trial. The trial court stated that while it did not encourage the practice of exchanging information in this way, it did not find that a new trial was warranted. Moose appealed to this Court. We reversed the conviction and granted a new trial. *Common-*

*wealth v. Moose,* 393 Pa.Super. 379, 574 A.2d 661 (1990) (hereinafter *"Moose I "*).

We held that Moose was deprived of his Sixth Amendment right to counsel because the Commonwealth had taken a statement from Moose, via Oglesby, without benefit of counsel; that the Oglesby–Commonwealth implied understanding violated the rule in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecution's suppression of evidence favorable to an accused upon request violates due process) and required a new trial; and that the Commonwealth's failure to comply with the discovery rules also required a new trial. The Commonwealth appealed the Superior Court's decision to the Pennsylvania Supreme Court, which affirmed the grant of a new trial. *Commonwealth v. Moose,* 529 Pa. 218, 602 A.2d 1265 (1992) (hereinafter *"Moose II "*).

The Supreme Court reasoned that Moose's right to counsel had attached at the time he spoke with Oglesby in the York County prison, because Oglesby was an agent of the Commonwealth. *Id.* at 228, 602 A.2d at 1270. The Court characterized as "villainy" the Commonwealth's practice of leaving Oglesby in the York County jail to collect information from anyone charged with a crime. *Id.*

In addition, the Supreme Court affirmed this Court's finding that Oglesby's statement was material to Moose's case. Oglesby testified that Moose stated he hit and raped the victim. This was significant to the issue of Moose's guilt. The Supreme Court also noted that Moose's discovery request was general in nature and did not specifically request information on government witnesses or agreements between the Commonwealth and its witnesses. The Court stated, however, this omission was directly a result of the fact that the district attorney failed to identify Oglesby or disclose his existence at the outset. *Id.* at 234, 602 A.2d at 1273. In the context of the discovery hearings in this case, it is clear that the district attorney's assurances that all material evidence had been made available to the defense were false. As a result of the Court's "deep concern over the conduct of the Commonwealth in this instance, [the] matter [was] referred to the Disciplinary

Board for its consideration." *Id.* at 240, n. 12, 602 A.2d at 1276, n. 12. The *Moose II* Court stated that:

what the district attorney appears to have attempted to do was to try his case with last minute disclosures. Such a plan was fundamentally unfair and violated the discovery rules. The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned. We agree with the statement of the Superior Court in a similar instance, remarking that "[o]ur court has condemned such gamesmanship in criminal prosecutions." *Commonwealth v. Thiel,* 323 Pa.Super. 92, 100, 470 A.2d 145, 149 (1983). In *Thiel,* the Commonwealth "left the [evidence] conspicuously out of its short pre-trial list of tangible evidence in its possession, and used the [evidence] skillfully in rebuttal." *Id. See also* Comment to Rule 305.

*Id.* 529 Pa. at 236, 602 A.2d at 1274.

The Court also addressed the Commonwealth's contention that the admission of Oglesby's statement was harmless error, finding that "Oglesby's statement was extremely damaging since he testified that Moose admitted to having sex with the victim and hitting her with a rock. The Commonwealth has clearly failed to meet its burden of proving beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 239, 602 A.2d at 1276 (citation omitted). Thus, the Superior Court's grant of a new trial was affirmed.

On April 16, 1992, before this case could be retried, Moose filed a motion to disqualify the prosecutor. On April 29, 1992, after a hearing, the motion was granted. Thereafter, on May 6, 1992, Moose filed a motion to dismiss the charges on double jeopardy grounds. The trial court set a hearing date for May 26, 1992. On May 18, 1992, Moose had also filed a motion to bar the Commonwealth from seeking the death penalty on retrial. On June 23, 1992, the trial court denied Moose's motion for dismissal of the charges, but granted his motion to bar the Commonwealth from seeking the death penalty on retrial. This appeal followed.

## PART I. DOUBLE JEOPARDY

■ Moose argues that re-prosecution is barred in this case by the double jeopardy clause of the Pennsylvania Constitution, as recently interpreted in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992). In response to Moose's request for dismissal of the charges, the Commonwealth argues first that its only transgression was against the criminal discovery rules, for which the remedy is continuance or estoppel from using the evidence withheld by the Commonwealth. *See* Pa.R.Crim.P., Rule 305(E), 42 Pa.C.S.A. The Commonwealth also argues that the reason for the grant of a new trial in this case is that the trial court reversed, mid-trial and without explanation, its decision to preclude Oglesby's statement at trial. Therefore, it argues that prosecutorial misconduct was not the impetus for Moose's new trial, and that therefore Moose is not entitled to discharge under the double jeopardy clause.[2]

Moose relies upon *Smith*, in which the Supreme Court instructed that:

[t]he United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. In contrast to prosecutorial error, overreaching is not an inevitable part of the

**2.** The Commonwealth also argues that Moose received what he requested on appeal, *i.e.*, a new trial, and should not now be permitted to seek additional relief in the form of dismissal of the charges. We disagree. A defendant is not required to file for dismissal under the double jeopardy clause on direct appeal. Moose requested and was granted a new trial. It is not axiomatic from that juncture, however, that the Commonwealth will undertake re-prosecution. Once that decision has been made by the Commonwealth, the question of being placed twice in jeopardy is ripe for review. Until that time, we will not address the question, because this Court does not issue advisory opinions. *Application of Milton S. Hershey Medical Center of Pennsylvania State University*, 407 Pa.Super. 565, 595 A.2d 1290 (1991). Therefore, Moose did not waive the present double jeopardy challenge, as the Commonwealth's argument suggests.

trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

*Smith* at 184, 615 A.2d at 324.

Before the Supreme Court heard *Smith*, Pennsylvania law provided that double jeopardy would bar retrial only where the Commonwealth's prosecutorial misconduct was aimed at goading a defendant into moving for a mistrial. *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987) (adopting *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). The rationale underlying this holding involves trial strategy. Where the Commonwealth grows dissatisfied with the progress of a trial, it might, as a strategic maneuver, provoke a defendant to move for mistrial and thus procure a second opportunity to try the case. *Id.* Regardless, as long as defendant is in control of the progress of his trial, as in moving for mistrial, the double jeopardy clause and its concomitant protections are not implicated. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). Because the prosecutorial strategy of goading for mistrial is a deliberate effort to achieve a second trial, and another opportunity to convict, however, the Supreme Court has held that the double jeopardy clause protects a defendant in this situation. *Simons, supra.* In contrast, that misconduct which "was undertaken in bad faith to harass the defendant deliberately" did not bar retrial on double jeopardy grounds. *Simons* at 14, 522 A.2d at 540. The rationale for the distinction is that bad faith conduct undertaken to prejudice or harass is not necessarily designed to achieve a second trial. Nonetheless, the outcome of the misconduct is the same. The defendant is deprived of a fair trial.

In *Smith*, the defendant was a high school principal who was tried for the murder of a schoolteacher. Smith was accused of conspiring with the victim's husband to murder her and recover proceeds from her life insurance. Smith's first conviction was reversed after the Supreme Court found that inadmissible hearsay statements were admitted as evidence at

trial. The Supreme Court then granted Smith a new trial. *Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1989). Before the second trial was conducted, defense counsel learned that the Commonwealth had concealed physical evidence. The relevant evidence consisted of "adhesive lifters" used to remove sand from the victim's body. This evidence was a vital part of Smith's defense, because he had contended that the murder occurred in Cape May, New Jersey, a location at which Smith could not be placed at the time of the murder. The Commonwealth knew of this evidence at the time of trial. The prosecution's misconduct, however, did not end with its concealment of the adhesive lifters. The Commonwealth also accused a police officer of fabricating testimony that sand was found on the victim's body. *Id.* The Supreme Court found it "hard to imagine more egregious prosecutorial tactics." *Id.* 532 Pa. at 182, 615 A.2d at 323.

The Court held that even though the prosecutor's conduct was not aimed at goading the defendant to move for a mistrial, the conduct was outside of the realm of all principles of justice and fairness. *Smith* at 183–184, 615 A.2d at 324. Therefore, the Supreme Court overruled *Simons* and held that double jeopardy would bar retrial in cases where the prosecution intentionally deprived the defendant of a fair trial. *Smith* at 184–186, 615 A.2d at 325.

■ The effect of *Smith,* however, is not to create a *per se* bar to retrial in all cases of intentional prosecutorial misconduct. Rather, *Smith* merely adds to the exceptions to the general rule that when a defendant moves for mistrial on the grounds of prosecutorial overreaching, retrial will not be barred under the double jeopardy clause of the Pennsylvania Constitution. Until *Smith,* the only exception to the general rule was that set forth in *Oregon v. Kennedy* and *Commonwealth v. Simons.* Now, in order for double jeopardy to bar retrial in cases of prosecutorial misconduct, there must be a showing that the Commonwealth either (1) goaded the defendant into moving for a mistrial, or (2) specifically undertook to prejudice the defendant to the point of denying him a fair trial. Absent such a showing, retrial is not barred. *Common-*

*wealth v. Rightley,* 421 Pa.Super. 270, 617 A.2d 1289 (1992). The prosecutorial misconduct at Moose's trial was not the same type of overreaching or harassment involved in *Smith.*

◼ The misconduct in this case is not such that Moose was provoked to move for mistrial. Nor can it be construed to be conduct that intentionally deprived Moose of a fair trial. After repeated requests, the Commonwealth failed to disclose Oglesby's identity or the existence of his statement until the first day of trial. Additionally, the existence of the "understanding" between the Commonwealth and Oglesby was not disclosed until after Moose's conviction. If it had been disclosed, Oglesby's credibility would have been tested by cross-examination. By failing to timely reveal the existence of the agreement, the Commonwealth knowingly foreclosed Moose from attempting to create in the minds of the factfinder the existence of a reasonable doubt arising from Oglesby's motivation for testifying. Accordingly, the appropriate remedy is a new trial:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [the discovery rules], the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P., Rule 305(E), 42 Pa.C.S.A.

We have already determined that Moose's Sixth Amendment rights were violated by the district attorney's behavior. *Moose I, supra.* The Supreme Court affirmed this holding and proceeded to refer the Commonwealth's conduct in this matter to the disciplinary board. *Moose II, supra.* The district attorney's behavior signified and represented a breakdown in our system of administration of justice. We do not find, however, that this is equivalent to a specific intention to deprive the defendant of a fair trial, as in *Smith.*

The prosecution in *Smith* deliberately withheld for four years clearly exculpatory evidence that was crucial to Smith's potentially successful defense. The Commonwealth in *Smith* continued to seek the death penalty while it continued to conceal the exculpatory physical evidence. The misconduct in this case, however, consisted of violations of the criminal discovery rules and the *Brady* doctrine. The prosecution in Moose's case did inform the court and defense counsel of Oglesby's statement, albeit at the last minute. Thus, the prosecutor's conduct, while egregious, does not rise to the level of subversive tactics present in *Smith.* In this case, it may fairly be stated that the prosecutor reprehensibly attempted to gain the upper hand by making a last-minute disclosure. There is no evidence here, as there was in *Smith,* that the Commonwealth intended to forever conceal Oglesby's statement. Moreover, the result of withholding Oglesby's statement is not the same as in *Smith,* where a crucial piece of physical evidence clearly exculpatory to the defendant was withheld. As a result of defense counsel's objection, Oglesby's statement was precluded. Nonetheless, the trial court without explanation subsequently allowed Oglesby to testify during trial. This was error. It is not a case, however, where the evidence and misconduct at trial show a clear, calculated orchestration by the prosecution to deny Moose a fair trial. Therefore, Moose is not entitled to discharge under *Smith.* A new trial will present Moose with a fresh opportunity for full cross-examination of all testimony, the unexpected admission of which originally created the need for a new trial of this case.

The Commonwealth also argues that the reason for the grant of retrial is the trial court's erroneous reception of Oglesby's statement, and not prosecutorial misconduct. Therefore, it argues that the appropriate remedy is preclusion, which negates the misconduct in this case. We agree. The Supreme Court, in its affirmance of this Court's grant of a new trial, stated specifically:

> [w]hat is particularly harmful about this case is that [Moose] evidently relied upon the agreement not to use the state-

ment of Oglesby. . . . We believe that unless a new trial is granted, we would be condoning and encouraging such last minute disclosures and gamesmanship. Thus, for the foregoing reasons, we hold that the trial court abused its discretion in permitting Oglesby to testify on rebuttal, and a new trial is required.

*Moose II*, 529 Pa. at 237, 602 A.2d at 1275. *Moose II* states that a new trial is granted because the trial court abused its discretion. In addition, the Supreme Court found the district attorney's misconduct to be so egregious as to require referral to the disciplinary board. Double jeopardy principles, however, do not prevent Moose's retrial where as here, the prosecutorial misconduct is not "intended to prejudice the defendant and thereby deny him a fair trial." *Smith* at 186, 615 A.2d at 325. Indeed, the Supreme Court has taken note that "every act on the part of a rational prosecutor is meant to prejudice the defendant by placing before the judge or jury evidence leading to a finding of guilt." *Kennedy*, 456 U.S. at 674, 102 S.Ct. at 2089.

We have cautiously scrutinized the facts, procedure, and recent pronouncement by the Pennsylvania Supreme Court in *Smith* concerning double jeopardy. On the basis of those factors, we find that the conduct of the district attorney in this case does not constitute the type of overreaching contemplated by the Supreme Court when it granted criminal defendants the right to use the bar of double jeopardy as a shield against retrial in cases where the prosecution subverts relevant trial evidence. For the above-stated reasons, the order of the trial court denying Moose's motion for dismissal of the charges is affirmed.

## PART II.  RETRIAL ON DEATH PENALTY

■ The question presented in the Commonwealth's cross-appeal is whether it should be permitted to seek the death penalty on retrial. The Commonwealth notified the trial court that it intended to seek the death penalty on retrial. Moose filed a pretrial motion requesting that the Commonwealth be barred from seeking the death penalty. The court granted

Moose's motion. The basis for the trial court's decision is *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). In *Bullington*, the Supreme Court majority held that the sentencing procedure at Bullington's first trial was similar to the trial on guilt or innocence. Accordingly, the Court held that the jury's sentence of life imprisonment at the first trial meant that the jury had "already acquitted the defendant of whatever was necessary to impose the death sentence." *Bullington* at 445, 101 S.Ct. at 1861. The Court reasoned that the double jeopardy clause would forbid retrial of the death penalty issue where the jury had acquitted the defendant of a death sentence. *Bullington* at 446, 101 S.Ct. at 1862. The trial court adopted this rationale. We affirm.

The order of the trial court denying Moose's motion for discharge is affirmed. The order granting Moose's motion to bar the Commonwealth from seeking the death penalty on retrial is affirmed. Jurisdiction is relinquished.