RENDERED: MARCH 17, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000437-MR

MICHAEL A. DUNN                                                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                                    2014-CA-001966-OA
MONTGOMERY CIRCUIT COURT NO. 08-CR-00226

HONORABLE BETH LEWIS MAZE
(JUDGE, MONTGOMERY CIRCUIT
COURT)                                                            APPELLEE

AND

COMMONWEALTH OF KENTUCKY                          REAL PARTY IN INTEREST

## OPINION OF THE COURT BY JUSTICE NOBLE

## REVERSING AND REMANDING

The Appellant, Michael A. Dunn, was previously prosecuted for seven identically worded counts of first-degree sodomy. He was acquitted on two of those counts, and convicted of the other five. His convictions were later vacated, and a new trial was ordered. On remand to the trial court, Dunn claimed his re-prosecution was barred by double jeopardy. The trial court denied his claim. The Court of Appeals declined to grant a writ of prohibition barring the impending retrial. A new trial on the vacated counts, however, raises a substantial risk that Dunn will be tried for crimes for which he has

already been acquitted, thereby violating his double-jeopardy rights. For that reason, the order of the Court of Appeals denying Dunn's petition for a writ of prohibition is reversed.

## I. Background

In 2008, Dunn was charged with seven counts of first-degree sodomy with a minor. All seven counts of the indictment read identically. At trial, the minor described five instances of anal sodomy in detail, including the approximate time and circumstances surrounding the events. The minor also testified that Dunn forced him to perform oral sex twice, though there appears to have been less detail about those events. Though there was ample testimony that would have allowed the jury to distinguish between the various incidents, at least as to the anal sodomies, the jury instructions on all seven counts were worded identically. The jury found Dunn guilty of five counts (counts 1 to 4, and count 7) and not guilty of two counts (counts 5 and 6). He was sentenced to fifty years in prison.

Dunn appealed to this Court. *See Dunn v. Commonwealth*, 360 S.W.3d 751 (Ky. 2012). He raised several issues but did not complain that the jury instructions failed to factually differentiate between the counts, despite clear law holding such failure to be reversible error. *See Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) ("[I]t is now settled that a trial court errs in a case involving multiple charges if its instructions to the jury fail to factually differentiate between the separate offenses according to the evidence."). The closest he came to this issue was in complaining that the trial court erred in failing to order a bill of particulars, and that he was misled about which

2

incidents were included in the indictment and was thereby deprived of proper notice of the charges. *Dunn*, 360 S.W.3d at 760. This Court affirmed his convictions.

Nine months after this Court affirmed, Dunn filed a *pro se* motion under Criminal Rule 11.42 collaterally attacking his conviction. He raised numerous issues, including that his trial counsel had been ineffective by failing to object to the identically worded jury instructions. The trial court denied the motion.

The Court of Appeals vacated Dunn's convictions and remanded for a new trial. The court's opinion in that case was very short, as the Commonwealth conceded both that Dunn's counsel had been ineffective, given that instructions like those used in his case are palpable error under *Miller*, and that Dunn was entitled to a new trial. *See Dunn v. Commonwealth*, 2013-CA-000222-MR, 2014 WL 1155474, at *1 (Ky. App. Mar. 21, 2014) (unpublished opinion).

On remand, Dunn moved to dismiss the indictment, claiming that his right to a speedy trial was being violated and that retrial would violate the bar on double jeopardy. The circuit court denied his motions. As to the double-jeopardy claim, the court concluded that retrial was not barred because his convictions had been vacated for instructional errors and remanded for a new trial, with no appellate finding of insufficiency of the evidence. Interestingly, the court ordered retrial on all seven counts, even the two of which Dunn had been acquitted by the jury. Dunn moved the court to reconsider its order, but the motion was denied.

Dunn then filed a petition for a writ of prohibition in the Court of Appeals seeking to bar his retrial. He again claimed that his right to a speedy trial and the prohibition on double jeopardy would be violated by retrial. The Court of Appeals granted the writ as to the two counts for which Dunn had been acquitted, but denied the writ otherwise. As to the other five counts, convictions for which had been vacated, the court concluded Dunn had not shown that he lacked an adequate remedy by appeal, as required for the remedy of a writ to even be available. (The court followed this conclusion by stating: "Nothing prevents Dunn from taking an appeal from the circuit court's order denying any motions to suppress evidence should he be convicted of any offenses on retrial." This statement is curious because Dunn has not raised, at this time, any complaint that evidence should have been suppressed.) The court did not specifically address how Dunn had an adequate remedy by appeal for his speedy-trial and double-jeopardy claims.

Dunn now appeals to this Court as a matter of right. *See* CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court ...."). He has not asked this Court for intermediate relief under Civil Rule 76.36(4), though it appears that the circuit court has continued the underlying case while this appeal is pending. The Commonwealth did not cross-appeal that portion of the Court of Appeals' order barring retrial of the two counts of which Dunn was acquitted, and has indicated its assent to that part of the opinion.

4

## II. Analysis

Although Dunn has raised two issues, that his right to a speedy trial has been violated and that his right against double jeopardy will be violated by retrial, we address only the latter because it is dispositive of his case. Dunn's double jeopardy argument is that because he was acquitted on two of the seven identically worded counts, he may not be retried on the remaining five counts. His claim is, in essence, that because the counts were identically worded, we cannot know whether the counts to be retried are ones that have already resulted in an acquittal. Kentucky has not addressed this issue, though it has hinted that identically worded "carbon copy" jury instructions contain a double-jeopardy problem. *See Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (noting that the issue with such instructions may be "viewed as one of ... double jeopardy," among others (quoting *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002))). Other jurisdictions, however, have consistently concluded that under such circumstances, "nothing would preclude a new jury from convicting [the defendant] for alleged incidents for which he already has been acquitted," and that would "constitute double jeopardy." *State v. Heaven*, 110 P.3d 835, 838 (Wash. 2005).

But this is not a typical appeal where we can jump immediately to the merits of an appellant's claims. It is, instead, the appeal of a denial of a petition for a writ of prohibition. Generally speaking, cases in which a writ of prohibition or mandamus is sought proceed in two steps. *Collins v. Braden*, 384 S.W.3d 154, 158 (Ky. 2012). First, the court must look at whether such an extraordinary remedy is even available, before deciding the merits of the

5

claimed legal error. *Id.* Second, if the court finds that the remedy is available, it may then look at the merits of the claimed error. *Id.* And if the trial court has erred or is about to err, the court may issue the writ. *Id.* Thus, we must first examine whether the remedy is even available.

## A. Remedy by way of a writ is available to vindicate a claimed violation of the Double Jeopardy Clause's bar on successive prosecutions.

In deciding whether the remedy is available, this Court has divided writ cases into "two classes ..., one addressing claims that the lower court is proceeding without subject matter jurisdiction and one addressing claims of mere legal error." *Id.* at 158. Dunn has not made a claim under the first class, and thus we address only the second.

Under the second class, a writ *may* be granted—that is, the remedy is available—if "there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). Of the two prerequisites for this class of writ, the first is mandatory, and thus Dunn is required to prove that he has no adequate remedy by appeal. *Marcum v. Scorsone*, 457 S.W.3d 710, 716 (Ky. 2015).

The Court of Appeals held that Dunn had an adequate remedy by appeal, concluding that any double-jeopardy claim could be addressed by an appeal if he were again convicted. In so concluding, the Court of Appeals acted in accordance with our cases stating that double-jeopardy questions generally may be remedied by appeal, and thus whether to examine a double-jeopardy

6

issue in a writ action is wholly discretionary. *See, e.g., St. Clair v. Castlen*, 381 S.W.3d 306, 309 (Ky. 2012); *St. Clair v. Roark*, 10 S.W.3d 482, 485 (Ky. 1999).

This blanket approach to double jeopardy, however, ignores that double-jeopardy questions arise in two distinct categories: those where a defendant is prosecuted for multiple crimes arising from the same conduct, and those where the defendant is prosecuted a second time (after either a conviction or an acquittal). These categories reflect the fact that the Double Jeopardy Clause both protects "against ... the actual imposition of two punishments for the same offense" and "protects a criminal defendant from being *twice put in jeopardy* for such punishment." *Witte v. United States*, 515 U.S. 389, 396 (1995); *see also United States v. Central Liquor Co.*, 628 F.2d 1264, 1266 (10th Cir. 1980) ("The right not to be tried more than once and the right not to receive multiple convictions and punishments for the same offense are both protected by the double jeopardy clause, but they are conceptually distinct rights."). This latter protection is perhaps best described as protection against successive prosecutions.

Our adequate-remedy cases apply in the context of a case in which a defendant is being prosecuted in a single proceeding for multiple crimes arising from one course of conduct and is thus subject to multiple punishments. The double-jeopardy question in such a case is resolved under *Blockburger v. United States*, 284 U.S. 299, 304 (1932). An appellate court should not intercede while such a case is ongoing because the doubling of jeopardy does not occur until the defendant is doubly punished. And any error in that context can be corrected on appeal. *See Abney v. United States*, 431 U.S. 651, 660

7

(1977) (noting that the protection against double punishment "can be fully vindicated on an appeal following final judgment").

Those cases, however, do not apply where the defendant complains of a second (or third or fourth) prosecution. Such cases implicate the Double Jeopardy Clause's second protection, namely, protection against "the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." *Id.* at 661 (quoting *Price v. Georgia*, 398 U.S. 323, 326 (1970)). This protection is "a guarantee against being twice put to trial for the same offense." *Id.*; *see also Blackledge v. Perry*, 417 U.S. 21, 31 (1974) (noting that "the Double Jeopardy Clause is distinctive ... [because] 'its practical result is to prevent a trial from taking place at all'" (quoting *Robinson v. Neil*, 409 U.S. 505, 509 (1973)). In other words, it is the second *trial* that is forbidden, assuming that the second trial would, in fact, result in double jeopardy. Indeed, it is for this reason that the federal courts allow an immediate appeal of a district court's order rejecting a successive-prosecution double-jeopardy claim and ordering a defendant to be tried a second time. *Abney*, 431 U.S. at 661. This is necessary because "these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken." *Id.* Thus, a post-trial appeal is inherently inadequate to protect this aspect of the double-jeopardy protection because "even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit." *Id.*

Some of our cases have acknowledged this limit and have suggested that a successive-prosecution double-jeopardy claim satisfies the inadequate-remedy requirement. For example, the seminal writ case *Hoskins v. Maricle* notes: "we have found the right of appeal inadequate when the petition of a criminal defendant seeks to prohibit a proceeding allegedly barred by the constitutional proscription against double jeopardy." 150 S.W.3d at 19; *see also Radford v. Lovelace*, 212 S.W.3d 72, 78 (Ky. 2006), *overruled on other grounds by Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009) (finding no adequate remedy by appeal where defendant claimed second trial was barred by double jeopardy).[1]

At the very least, then, our cases have treated this question inconsistently, often without even acknowledging the other line of cases. Today we resolve this conflict. Although the remedy of a writ remains discretionary with the reviewing court, there is not an adequate remedy by appeal where a defendant contends that double jeopardy would bar a second trial following either an acquittal or conviction. This, however, is not to say that all such claims will be meritorious; rather, it is to say only that the requirement of no adequate remedy by appeal is shown. The point is that a reviewing court must exercise its discretion not willfully, but soundly, when there is no adequate remedy by appeal.

---

[1] Ironically, *Hoskins* cites *St. Clair v. Roark* for this point, despite the fact that that case specifically concluded that a court could decline to review a writ petition "on grounds that there is an adequate remedy by appeal." *St. Clair v. Roark*, 10 S.W.3d 482, 485 (Ky. 1999).

The second writ prerequisite, of great injustice and irreparable injury, is more readily disposed of. A meritorious claim that double jeopardy bars retrial satisfies the requirement of great injustice and irreparable injury. *See Radford*, 212 S.W.3d at 79 (noting that irreparable injury turned on merits of the double-jeopardy claim). This seems obvious given that the constitutional protection against double jeopardy is one of our most basic freedoms against governmental overreach and is a fundamental aspect of our justice system. And the unique nature of the protection—against the trial itself—proves that any violation of the right—by having a second trial—is irreparable.

That said, even if the purported violation would not result in irreparable harm, a writ would still be available. The irreparable-harm requirement "may be put aside in *'certain special cases.'*" *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)). That limited sub-class of cases consists of those in which "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Id.* (quoting *Bender*, 343 S.W.3d at 801). A second trial in violation of the bar on double jeopardy "would constitute a miscarriage of justice and would disrupt the orderly administration of justice." *Hoskins*, 150 S.W.3d at 20. And thus, successive-prosecution claims also meet the special-cases exception.

10

**B. Dunn did not waive his double-jeopardy claim by failing to raise it in state collateral attack under Criminal Rule 11.42, nor by seeking to have his convictions vacated.**

Having concluded that the remedy of a writ is available, we would normally turn next to the merits of the claim. But the Commonwealth has also raised the claim that Dunn is barred from pursuing his double-jeopardy claim because he failed to raise it in his 11.42 action, or, barring that, because he successfully attacked his convictions.

The Commonwealth's claim is based on the holding in *Johnson v. Commonwealth*, 450 S.W.3d 707 (Ky. 2014). In that case, we held that a trial court is bound by an appellate court's mandate on remand and has no power to act in a manner inconsistent with it. *Id.* at 710–11. We also held that the process for reviewing a criminal judgment, both on direct appeal and in collateral attacks, is a complete system, and that "[a]t each stage in this structure, the defendant is required to raise all issues then amenable to review." *Id.* at 712. "Any issue that could have been raised but was not is treated as waived." *Id.*

The Commonwealth now suggests that the trial court and Dunn were bound by the Court of Appeals' remand for a new trial. It argues explicitly that the double-jeopardy question is one that should have been raised previously and is therefore waived.

After substantial research, however, it appears to this Court that the Commonwealth's argument is built on a pair of incorrect premises.

First, the trial court in this case would not be violating the appellate mandate by considering (and granting) Dunn's motion to dismiss if, in fact, he

11

has shown a double-jeopardy violation. Although the Court of Appeals remanded to the circuit court for a new trial, that does not literally require that Dunn be retried. Obviously, the defendant might enter a plea. Or the Commonwealth could choose to dismiss because evidence had been lost. In fact, any number of legitimate things might prevent a retrial. All a remand for a new trial does is reset the process, giving the Commonwealth the right to proceed or the defendant the right to plead—or not. This reset is subject to any directions from the appellate court: "upon return of a case from this court for a new trial the situation of the parties and the condition of the case is the same as if the trial court in place of this court had granted a new trial, subject, however, to the directions given by this court concerning the manner in which the case shall be retried." *Halteman v. Russell*, 185 S.W.2d 399, 402 (Ky. 1945).

For the Commonwealth to prevail on this issue, this Court would have to impose a rule of such rigidity as to defeat the purpose of a retrial in the first instance: to allow for a fundamentally fair trial. Such an extreme reading of *Johnson* borders on the ridiculous, and cannot justify the trial court requiring retrial on all *seven* charges, even though Appellant had been *acquitted* on two of the seven in the first trial.

It is also important to note that the follow-the-mandate rule laid out in *Johnson* applied to an *affirmed* judgment. 450 S.W.3d at 710; *see also Williamson v. Commonwealth*, 767 S.W.2d 323, 325 (Ky. 1989) (applying rule to portion of judgment affirmed on appeal). The rule is driven by the interest in finality of judgments, and thus it is addressed to situations "when an issue is *finally determined* by an appellate court." *Johnson*, 450 S.W.3d at 711 (quoting

12

*Williamson*, 767 S.W.2d at 325) (emphasis added). Simple logic dictates that an appellate court order constrains a trial court from "redoing" that which has already been affirmed and is the law of the case.

In vacating Dunn's conviction and remanding for a new trial, the Court of Appeals was, in fact, *not* deciding anything finally, at least not with respect to his guilt or, if necessary, appropriate sentence. If anything, the Court of Appeals delayed finality by undoing the existing judgment and allowing further proceedings.

But the Commonwealth also claims that the double-jeopardy issue could have been raised in the previous appeal and cannot be raised now under the rule that issues that could have been raised but were not treated as waived. This waiver rule is an extension of the law-of-the-case doctrine, and it works "to bar the trial court from considering issues on remand that could have been but were not raised in the appeal." *Johnson*, 450 S.W.3d at 712. But this rule is also concerned "with society's and the court's interest in the ultimate finality of judgments." *Id.* (quoting *Hollon v. Commonwealth*, 334 S.W.3d 431, 437 (Ky. 2010)). Again, there was no final judgment being affirmed that could be affected by raising new issues on remand. The finality interest served by the *Johnson* waiver rule simply was not in play because the Court of Appeals reversed and remanded this case for a new trial.

Indeed, what was important in *Johnson* was that this Court's prior opinion "required no further proceedings (*such as a retrial*, a hearing, or a resentencing at which probation was to be considered) that might have allowed a new issue to be injected into this case." *Id.* at 714 (emphasis added). Here,

13

the trial court was told to hold a new trial. That is precisely the type of further proceeding that *Johnson* contemplated would allow the injection of additional issues. And there were no limits in the Court of Appeals' remand, other than the implicit requirement that any retrial use appropriate jury instructions, and the double-jeopardy question had not previously been decided.

This brings us to the Commonwealth's second incorrect premise: the assumption that the double-jeopardy issue *could* have been raised and decided in the Criminal Rule 11.42 action, and thus was waived. The simple fact is that Dunn could not have asked either the trial court or the Court of Appeals to dismiss the charges against him because any double-jeopardy claim based on the threat of a second trial was not yet ripe.

Although a defendant does not have to wait until a second *conviction* before he may raise this type of double-jeopardy challenge, since it is the second *attempt* to convict that is forbidden, *see Witte v. United States*, 515 U.S. 389, 397 (1995) (holding that double-jeopardy claim was ripe when government undertakes second prosecution),[2] his claim is not ripe until the government actually initiates the second prosecution.[3]

---

[2] Indeed, this is why, as explained above, the federal courts allow an interlocutory appeal of an adverse double-jeopardy decision of this type.

[3] Some courts have held that a double-jeopardy claim is not ripe until the defendant receives a second punishment. *See, e.g., United States v. McKinley*, 38 F.3d 428, 430 (9th Cir. 1994) (concluding "that because the double jeopardy claim focuses on double punishment it is not ripe for review" where defendant had not yet been subjected to a second punishment); *United States v. Koonce*, 885 F.2d 720, 722 (10th Cir. 1989) (double-jeopardy motion not ripe for review "[u]nless and until defendant receives some punishment ... that is arguably multiple"). Those cases, however, are based on the Double Jeopardy Clause's protection against multiple punishments, not its protection against subsequent prosecution. Again, the "right not to be tried more than once and the right not to receive multiple convictions and punishments for the same offense are both protected by the double jeopardy clause, but they are

14

Until the government indicates its intent to try a defendant a second time, any "Double Jeopardy claim is pure speculation about what might occur in the future." *United States v. Suarez*, 617 Fed. Appx. 537, 545 (6th Cir. 2015). This appears to be the almost universal rule across the United States.[4] For

---

conceptually distinct rights." *United States v. Central Liquor Co.*, 628 F.2d 1264, 1266 (10th Cir. 1980). When the double-jeopardy claim becomes ripe depends on the nature of the protection claimed. Thus, a defendant may pursue—by interlocutory appeal, no less—a claim that he is being subjected to a second trial improperly, *see Abney v. United States*, 431 U.S. 651, 661 (1977), but would have to wait until convicted of two crimes that allegedly arise from the same act, whether in a single trial or successive trials, before he can invoke the protection against multiple punishment.

[4] The examples are too numerous to include in the text above. They include: *United States v. Qasim*, 294 Fed. Appx. 509, 514 n.6 (11th Cir. 2008) ("Whether the government would commence a second prosecution of Qasim for murder is speculation, and Qasim's double jeopardy claim is not ripe."); *United States v. Corona*, 34 F.3d 876, 882 n.5 (9th Cir. 1994) ("We do not address the question of whether the Double Jeopardy Clause now bars the government from trying Corona in California on the substantive counts. This issue would only become ripe if the government did attempt a second prosecution."); *Nelson v. State*, 72 So. 3d 1038, 1044-45 (Miss. 2011) (concluding that double-jeopardy claim based on fact that defendant "may be prosecuted in the future ... is not ripe for determination"); *Morris v. State*, 795 A.2d 653, 661 (Del. 2002) ("[A] properly presented claim that retrial is barred by double jeopardy cannot be raised unless and until the State elects to reprosecute. Accordingly, the issue is not ripe and we decline to pass upon the question. Whether or not the State will seek a retrial and, if so, how the double jeopardy issue will be presented to the Superior Court and how it will rule are all, of course, unknown future events. As interesting as this issue is, we may never have to decide it. If we were to speak to the issue in this Opinion we would be expressing an advisory opinion, and that is not our proper function." (footnotes omitted)); *State v. McKenna*, 512 A.2d 113, 115 (R.I. 1986) ("Unless or until a second prosecution is commenced, defendant's double-jeopardy challenge is speculative and not ripe for consideration by this court."); *Bailey v. State*, 688 P.2d 320, 322 (Nev. 1984) ("We conclude, however, that unless and until the state refiles the attempted murder charge, the double jeopardy claim is premature; accordingly, we decline to address it at this time. On remand, if the state refiles the murder charge, appellant may raise his double jeopardy claim in district court by the appropriate motion."); *State v. Bazemore*, 107 Conn. App. 441, 945 A.2d 987 (App. Ct. Conn. 2008) (concluding "that because a second prosecution has not been commenced ..., the issue is not yet ripe for adjudication"); *York v. State*, 751 So. 2d 1194, 1199-200 (Miss. Ct. App. 1999) (concluding that double jeopardy "is not ripe for review" and that "the risk of double jeopardy is speculative" until government tries to prosecute); *State v. Rasch*, 935 P.2d 887, 890-91 (Ariz. Ct. App. 1996) ("Furthermore, we observe in passing that a double jeopardy issue is not 'ripe' until the defendant is prosecuted following a mistrial. The issue is normally presented when defendant moves to dismiss the second prosecution on double jeopardy grounds, claiming that judicial or prosecutorial overreaching intentionally forced a mistrial of

15

example, the Eleventh Circuit has held that where the district court directed a verdict of acquittal while an appeal of a suppression question was pending, a double-jeopardy claim was not yet ripe in the appeal. *United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995). The court held instead: "If the government decides to proceed with another trial of [the defendant], she may raise the double jeopardy issue which would then be ripe for decision. We cannot speculate what further proceedings, if any, will take place." *Id.*

Despite this authority, the Commonwealth cites *Commonwealth v. Davidson*, 277 S.W.3d 232, 235 (Ky. 2009), in which we affirmed the Court of Appeals' decision to bar retrial on double-jeopardy grounds, before there was ever a threat of retrial, where it found the evidence insufficient to support the conviction. But this case is at best factual precedent for the practice because the ripeness of the double-jeopardy question does not appear to have been raised in the case, either before the Court of Appeals on rehearing or before this Court on discretionary review, which was sought by the Commonwealth.

---

the original prosecution." (citations omitted)); *Burks v. State*, 876 S.W.2d 877, 889 (Tex. Crim. App. 1994) ("In regards to any potential claim of jeopardy which appellant might have to assert in a future prosecution, the proper time to argue this issue is after he has been charged or indicted for that unnamed future offense. As of now, that issue is far from ripe."); *Coles v. Smith*, 1:10 CV 525, 2013 WL 474706, at *8 (N.D. Ohio Feb. 7, 2013), *aff'd*, 577 Fed. Appx. 502 (6th Cir. 2014) ("[D]ouble jeopardy issues arise only after the state files a second indictment."); *Willing v. Warren*, CIV. 06-11650, 2006 WL 1107070, at *1 (E.D. Mich. Apr. 26, 2006) ("Double Jeopardy became ripe at the first notice of the State's intent to retry Mr. Willing in a published notice, June 30, 2005, and was furthered by its second notice of intent through an ex parte Motion for Writ of Habeas Corpus, filed July 22, 2005."); *Johnston v. Porter*, CV-05-078-CI, 2005 WL 2708421, at *4 (E.D. Wash. Sept. 29, 2005) ("To be colorable, a double jeopardy claim must have some possible validity. This issue would become ripe only if and when the government attempts a second prosecution" (citation and quotation marks omitted)).

16

*Davidson* simply has nothing to say about the ripeness of a double-jeopardy claim.

And this Court has declined elsewhere to address a double-jeopardy question as not yet ripe where a second prosecution has not yet been commenced. *See Applegate v. Commonwealth*, 299 S.W.3d 266, 271 (Ky. 2009) (holding that a double-jeopardy claim related to lack of specificity in jury instructions "is not yet ripe" because defendant had "not been again arrested or indicted for any crimes for which he has already been convicted"). Until the Commonwealth decides to proceed with the subsequent prosecution, any "concerns about double jeopardy are speculative and not justiciable." *Id.*

Of course, Dunn did request a new trial in his Criminal Rule 11.42 motion. It thus could be argued that he should have raised his double-jeopardy claim then because a second trial was inevitable if he prevailed (which he did). This is precisely the claim that was presented to the Pennsylvania Superior Court in *Commonwealth v. Moose*, 623 A.2d 831 (Pa. Super. Ct. 1993), as part of an argument that the defendant waived any double-jeopardy claim by asking for a new trial without raising the double-jeopardy question in the same appeal.

There, the government suggested, as does the Commonwealth here, that the defendant "received what he requested on appeal, i.e., a new trial, and should not now be permitted to seek additional relief in the form of dismissal of the charges." *Id.* at 835 n.2. But as we pointed out above, that assumes entirely too much. And, as the Pennsylvania court noted, "[i]t is not axiomatic from that juncture ... that the Commonwealth will undertake re-prosecution."

*Id.* Instead, it is only "[o]nce that decision has been made by the Commonwealth ... [that] the question of being placed twice in jeopardy is ripe for review." *Id.*

Indeed, it is axiomatic that a defendant is not at risk a second time—that is, subject to double jeopardy—until he in fact *is* put at risk. That can only occur when and if a second prosecution occurs.

And this case is a good example of where, at least at the time of Dunn's request for a new trial, the Commonwealth might have chosen not to proceed to trial a second time if Dunn's claim was successful. Dunn was acquitted of two of the charges against him, which suggests the Commonwealth's proof was not compelling across the board. It was entirely possible that the Commonwealth may not have wanted a second trial, whether because of concerns about its own resources being wasted or about further trauma to the complaining witness. Or, more likely, the Commonwealth might have anticipated seeking a plea agreement. Either way, a second trial might not have occurred.

We agree with the vast majority of courts to have addressed this question. Where a defendant's conviction has been vacated and the matter is remanded for a new trial, any claim of a violation of the double-jeopardy right against successive prosecution is not ripe until the Commonwealth indicates its intent to re-prosecute. Obviously that decision was eventually made in this case, but it did not (and could not) occur until the remand took place. We agree with Pennsylvania that there is no guarantee that a second prosecution will occur, and that any claim of a double-jeopardy violation before the Commonwealth indicates its intent would be speculative.

18

Finally, the Commonwealth suggests that Dunn is barred from raising his double-jeopardy claim simply because *he* procured the vacation of his convictions by pursuing his 11.42 remedies. If this were a case about an evidentiary error or other trial error, a reversal would not bar reprosecution on double-jeopardy grounds because "[i]t is elementary that one may not complain of former jeopardy when he procured the setting aside of the earlier judgment." *Ferguson v. Commonwealth*, 401 S.W.2d 225, 228 (Ky. 1965); *see also Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). That limit, however, does not apply where the defendant has previously been acquitted of the charges that he now challenges. A jury acquittal results in the greatest protection against subsequent prosecution. *See, e.g., Ball v. United States*, 163 U.S. 662, 671 (1896) ("The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense."). Indeed, "we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision." *Burks*, 437 U.S. at 1.

And, as the clincher, it should be noted that although Dunn obtained the vacation of his convictions on grounds of ineffective assistance of counsel, he has not waived any claim of double jeopardy with respect to the remaining counts given the unusual circumstances of his case. He claims, quite correctly, that he was acquitted of two counts at his previous trial and may never be re-tried for the offenses to which those counts correspond.

19

He also claims that because he (and, indeed, no one) can know what offenses those acquittals relate to, he cannot be retried on any of the counts. He is, in essence, pleading that his former acquittals bar a subsequent prosecution. If he is correct on that claim, then his present double-jeopardy claim cannot have been waived by his success in obtaining the vacation of his other convictions. He is not claiming that his re-prosecution is barred by the fact that he was previously prosecuted for those offenses; he is, instead, claiming that re-prosecution is barred because he was functionally acquitted of the previous offenses.

He is correct, then, that he did not waive his present double-jeopardy claim by successfully pursuing the vacation of his convictions. His double-jeopardy claim is not based on the fact of the previous convictions. It is instead based on the prior acquittals. A jury's verdict of acquittal, if indeed there is one, is absolute. If Dunn is correct that those acquittals apply to the other identically worded counts for which he was prosecuted, then he is correct that he has not waived any successive-prosecution claim as to those counts.

## C. Double jeopardy bars re-prosecution of Dunn.

Having concluded both that the remedy of a writ is available and that Dunn has not waived his successive-prosecution double-jeopardy claim, we turn now to the merits of that claim. As noted above, we have not previously addressed this issue, though we have hinted that the problem with identically worded "carbon copy" jury instructions may be "viewed as one of ... double jeopardy," among other concerns. *Miller*, 283 S.W.3d at 695 (quoting *Miller*, 77 S.W.3d at 576). Those cases have actually turned on the other concerns, such

20

as the effect of such instructions on the defendant's rights to a unanimous verdict and to due process. *See id.* 694–95 (discussing unanimous verdict and due-process problems).

The core problem when identical, generic counts are used is that "we cannot be sure what factual incidents were presented and decided by this jury." *Valentine v. Konteh*, 395 F.3d 626, 635 (6th Cir. 2005). The indictment in such a case is considered flawed for this reason. If the error in the indictment is carried on in the instructions and resulting jury verdict, a due-process violation occurs. The due-process problem is two-fold: the generic indictment failed to give adequate notice of the charges, *id.* at 631–32, and the indictment, along with the instructions and verdict, fails to provide adequate protection against double jeopardy *in the future, id.* at 634–35. This second aspect is not a double-jeopardy error *per se*; it is still a due-process violation.

At the time of the first trial, any double-jeopardy problem is only a potential one. As discussed above, such double-jeopardy issues are not ripe until a second prosecution is pursued. And that problem, while obviously related to due-process concerns, is distinct from any due-process problem. The due-process error is a present problem; any double-jeopardy problem is a future one. Thus, the instructions and jury verdicts have an existing defect affecting the defendant's rights to due process, but they also have the latent defect related to the defendant's double-jeopardy rights that can manifest only if there is a reversal of the convictions and a retrial in the future.

But in this case, we have arrived at that future. The Commonwealth previously employed a generic, identically worded multiple-count indictment.

21

The trial court then used generic, identically worded jury instructions on those counts. The jury returned a mixed verdict on those counts. And the Court of Appeals reversed the convictions on error conceded by the Commonwealth. The Commonwealth now seeks to prosecute Dunn a second time.

Dunn claims that his prior acquittals bar his retrial. This Court agrees. The latent defect has now become manifest; what had been a *potential* double-jeopardy problem has now become an existing double-jeopardy problem.

As Justice Cunningham has noted of identically worded jury instructions, "We do not know exactly which criminal acts the jury unanimously found the defendant guilty of." *Miller*, 283 S.W.3d at 705 (Cunningham, J., concurring). But that also means that we do not know exactly which criminal acts the jury unanimously *acquitted* the defendant of.

Unlike the convictions, which have been set aside, the acquittals continue to have full effect and are not undone by any appeal. Indeed, this is why the Court of Appeals granted the writ of prohibition to bar the circuit court from retrying Dunn on the two counts of which he was acquitted. But what crimes were covered by those counts?

Almost every other jurisdiction to have considered this question has concluded that upon retrial, "nothing would preclude a new jury from convicting [the defendant] for alleged incidents for which he already has been acquitted," and that such an outcome would "constitute double jeopardy." *State v. Heaven*, 110 P.3d 835, 838 (Wash. 2005); *accord State v. Salter*, 42 A.3d 196, 207 (N.J. Super. Ct. App. Div. 2012) ("[W]e could not say with any confidence that defendant would not endure a second prosecution for the same

offense after acquittal, something categorically prohibited by our double jeopardy jurisprudence." (internal quotation marks omitted)); *Goforth v. State,* 70 So.3d 174, 190 (Miss. 2011) (holding that defendant who was acquitted on three of five identically worded counts "cannot be prosecuted again on these charges or for any same crimes that occurred during the time period set forth in her indictment" when the convictions were reversed for other grounds); *Brown v. Superior Court,* 114 Cal. Rptr. 3d 804, 820 (Cal. Ct. App 2010) (concluding that "the prosecutor has not shown, and cannot show, that none of the acquittals pertained to the ... incident [being prosecuted]" and that "[d]ouble jeopardy precludes the retrial of [the] count"); *Commonwealth v. Hrycenko,* 630 N.E.2d 258, 263 (Mass. 1994) ("The defendant could not have been retried on the two indictments on which the convictions were reversed on appeal without being subjected to the risk of conviction on a rape charge on which he had been previously acquitted."); *State v. Ogle,* 2007-Ohio-5066, 2007 WL 2793355, ¶ 23 (Oh. Ct. App. Sept. 27, 2007) (unpublished opinion) (finding double jeopardy barred retrial upon reversal where defendant was acquitted on some counts and convicted of others); *Madsen v. McFaul,* 643 F. Supp. 2d 962, 968 (N.D. Ohio 2009) ("This Court realizes the jury acquitted Petitioner on two of the eight rape counts, but the carbon-copy nature of the Indictment and Bill of Particulars result in an effective acquittal on all eight counts for the purpose of evaluating this Petition."); *cf. Isaac v. Grider,* No. 98-6376, 2000 WL 571959 (6th Cir. 2000) (unpublished table decision) (noting that "the identical charges introduced the risk of double jeopardy and, indeed, may have already resulted in double jeopardy in *this prosecution* given the unique facts of this case,"

23

namely, where trial court acquitted defendant on four charges and then submitted six charges to jury, which convicted); *Dorsey v. Banks*, 749 F. Supp. 2d 715, 743–46 (S.D. Ohio 2010) (finding double-jeopardy violation where trial court acquitted defendant on two charges but allowed a third charge to go to the jury, and there was evidence of multiple offenses).

Where the earlier not-guilty verdicts are based on generic, identically worded counts both in the indictment and jury instructions, they must be given effect. Because those acquittals cannot be tied to any particular alleged crimes, they must necessarily act as acquittals on all the counts brought at that time, just as they would if Dunn had been indicted for additional identical counts after the first trial had resulted in only acquittals. If the Commonwealth retries Dunn for any of the counts originally at issue in his trial, he faces a risk of being tried for a count for which he has already been acquitted. There is simply no way, in this after-the-fact review, to definitively say on which counts the jury acquitted Dunn. The Commonwealth cannot hide behind jury instructions—found to be flawed by the Court of Appeals in the 11.42 appeal, and admitted to be erroneous by the Commonwealth itself—to avoid the risk that Dunn is being placed in double-jeopardy by his retrial.

As noted above, this Court has previously condemned the use of identically worded jury instructions on multiple counts that do not require the jury to factually distinguish one instance of a crime from another. Such instructions implicate multiple constitutional rights, including the right to due process. But this case illustrates the greater problem with the use of such instructions. Not only are the jury verdicts based on such instructions flawed,

24

but retrial cannot be had if the jury returned a mixed verdict. As the Ohio federal district court noted in *Madsen*, being convicted on "two out of [seven] counts ... result[s] in an effective acquittal on all [seven] counts." *Madsen*, 643 F. Supp. 2d at 968.

### III. Conclusion

A new trial in this case raises a substantial risk that Dunn will be tried for crimes for which he has already been acquitted, thereby violating his double-jeopardy right against successive prosecution. For that reason, the order of the Court of Appeals denying Dunn's petition for a writ of prohibition is reversed, and this case is remanded to the Court of Appeals to issue a writ in conformity with this opinion.

Minton, C.J.; Hughes, Venters and Wright, JJ., concur. Keller, J., concurs in result only. Cunningham, J., not sitting.

25

COUNSEL FOR APPELLANT:

Matthew McGavock Robinson
Robinson & Brandt, P.S.C.
629 Main Street, Suite B
Covington, Kentucky 41011


APPELLEE:

Honorable Beth Lewis Maze
Judge, Montgomery Circuit Court
21st Judicial Circuit
PO Box 1267
Mt. Sterling, Kentucky 40353


COUNSEL FOR REAL PARTY IN INTEREST:

Andy Beshear
Attorney General

Jeffrey Allan Cross
Assistant Attorney General
Office of Criminal Appeals
Attorney General's Office
1024 Capital Center Drive
Frankfort, Kentucky 40601

Ronnie Lee Goldy, Jr.
Commonwealth's Attorney
44 West Main Street, Suite A
Mt. Sterling, Kentucky 40353